**UNITED STATES of America,
Appellee,**

**v.**

**Louis E. WOLFSON and Elkin B.
Gerbert, Defendants-Appellants.**

**Nos. 651–652, Dockets 33111–33112.**

United States Court of Appeals
Second Circuit.

Argued May 15, 1969.

Decided July 1, 1969.

Douglas S. Liebhafsky, Charles P. Sifton, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., for appellee.

William O. Bittman, Hogan & Hartson, Edgar H. Brenner, Arnold & Porter, Austin S. Mittler, James E. Krier, Stuart Philip Ross, Washington, D. C., for appellants.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

Appellants Wolfson and Gerbert appeal from an order of Hon. Edmund L. Palmieri, United States District Judge for the Southern District of New York, entered on December 2, 1968, which denied their motion for a new trial. Appellants had been convicted after a jury trial presided over by Judge Palmieri of violating and conspiring to violate Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, in connection with sales of the common stock of Continental Enterprises, Inc. Judgments of conviction had been entered on November 28, 1967. Appellant Wolfson was sentenced to one year's imprisonment on each of nineteen counts (the time to run concurrently), to pay fines totaling $100,000, and to pay the costs of prosecution. Appellant Gerbert was sentenced to six months' imprisonment on each count (to run concurrently), and to pay fines totaling $50,000. The defendants appealed to this court, which, on December 27, 1968, affirmed their convictions. United States v. Wolfson, 405 F.2d 779 (2 Cir 1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969).

On October 9, 1968, during the pendency of the original appeal, appellants moved the district court for a new trial, alleging that the Government had introduced a spurious document in evidence. Judge Palmieri, to whom the motion was referred, held a six day evidentiary hearing between November 12 and November 20, 1968. On December 2, 1968 Judge Palmieri filed an opinion and order denying the motion. We affirm this order of the trial judge whose comprehensive opinion is reported at 297 F. Supp. 881.

In defense to the 1967 Section 5 prosecution appellants asserted that they had had no knowledge of the registration requirements of Section 5. In rebuttal the Government called James Duncan, who had been Assistant Regional Administrator of the Washington Office of the Securities and Exchange Commission. Having refreshed his recollection from a memorandum in the Commission's files dated October 16, 1950 which became Government's Exhibit 21, Duncan recalled an October 12, 1950 conference in which E. Russel Kelly, then the Regional Administrator of the Washington Office and since deceased, had explained the registration requirements to Wolfson and a relative of Wolfson, Doran Weinstein, who was then a business associate of Wolfson. This conference was part of an SEC investigation into the Capital Transit Company, a company controlled by Wolfson. Government's Exhibit 21, an eight page memorandum prepared by Kelly after the October 12 interview and checked at that time by Duncan, was received into evidence, Duncan having been unable at trial independently to recall all the details of that meeting. Wolfson on his part denied any recollection whatever of the two hour interview. Undoubtedly Government's Exhibit 21 weighed heavily with the members of the jury when they considered the guilt or innocence of appellants.

In June 1968, Wolfson's attorneys began informally to question the authenticity of Government's Exhibit 21, the Kelly memorandum. Allegedly an unnamed attorney had told Wolfson counsel that an unidentified SEC employee had stated that the Kelly memorandum had been prepared some time after 1964 specifically for use against Wolfson in the prosecution of the Continental case.[1] On request of Wolfson's attorneys in June and July the Government allowed

---

1. The identities of the unnamed SEC employee and the attorney who spoke with appellants' attorney in this chain of hearsay have not been disclosed to this court in briefs or at argument.

them and their experts to inspect this memorandum and to reproduce it photographically. In early September, Wolfson's experts concluded that the 1950 memorandum could not have been prepared in 1950. The basis for this conclusion was that the watermark impressed on the paper upon which the "spurious" document was typed was allegedly first used in 1952, some two years later than the 1950 date on the document.[2]

Later, in September, Wolfson's attorneys sought leave to take additional photographs of the document solely in order to append them to the new trial motion which was in preparation. Wolfson's attorneys were advised by the Government to apply to the district court if they desired further opportunity to inspect or to copy the questioned memorandum. No such application was made, and, on October 9, 1968, appellants filed their motion for a new trial with supporting affidavits that recited the grounds counsel contended proved that the Kelly memorandum was spurious.

Judge Palmieri, to whom the motion had been referred on its return date, scheduled a hearing to begin on November 12, 1968. On November 8, 1968, appellant Wolfson filed a motion for discovery and inspection returnable on the 12th. Granting Wolfson this requested last minute discovery would have delayed the hearing so Judge Palmieri denied the motion, but he informed counsel that he would consider the matter further "if during the course of this hearing or at the conclusion of it I think the interests of justice would be served by any discovery or disclosure."

At the hearing various expert witnesses testified relative to the authenticity of Government's Exhibit 21 and to the possibility that it had been prepared on a date later than the October 16, 1950 date it bore. At the conclusion of all the evidence the court asked the parties to submit prepared findings of fact and conclusions of law. After reviewing these submissions and the extensive record before him, Judge Palmieri filed a detailed opinion, reported at 297 F.Supp. 881, concluding that the evidence did not sustain appellants' claims and holding that the challenged memorandum was "a valid and authentic document." Id. at 891.

Of course the central issue of the hearing was whether the Kelly memorandum could have been prepared before 1952. Certain facts were essentially undisputed. It was not contested that the watermarks on the pages of the questioned document had been impressed on the paper by a dandy roll manufactured by the J. J. Plank Corporation; that Plank had used one metal die to produce an electrotype of the Government Seal watermarks beginning about 1940 and a different die beginning about 1952; that the 1952 electrotype design differed from the 1940 electrotype design in various details; that up until 1955 Plank had also manufactured Government Seal dandy rolls bearing handmade bent-wire designs; and that in the period in which both electrotype and handmade designs were used, i. e., between 1940 and 1955, Plank made more dandy rolls with handmade marks than with electrotype marks.[3]

---

2. The evaluation by the trial judge of appellants' experts appears at 297 F.Supp. at 890–891. In connection with the appraisal of the testimony of Pearl Tytell, who, together with her husband Martin Tytell, were Wolfson's questioned document experts, the Government introduced into evidence Government's Exhibit 27, a press release to be published contemporaneously with the filing in October 1968 of the petition for a new trial, puff-

ing their investigation of the Kelly memorandum and branding the document "spurious."

3. A "watermark" is a design placed on paper by the manufacturer for the purpose of identification. The device which impresses the watermark on the paper is a design made of raised metal—either an electrotype (one piece of metal cast from a die) or a handmade design (com-

Appellants through their experts and their witnesses attempted to establish that, based upon expert examination of the disputed document, the watermarks were made by the 1952 electrotype design. On the other hand, the Government, through its experts, sought to rebut appellants' contention and to show that the design could well have been made by one of the numerous hand bent-wire designs used by Plank for many years prior to 1952. It was stipulated that Duncan's trial testimony that he had seen and checked the Kelly memorandum within a few days of its preparation would be a part of the hearing record. This trial testimony was corroborated at the new trial hearing by the secretary who worked for Mr. Kelly in 1950. She identified the questioned document as her typing and was able to affirm the genuineness of the 1950 date typed thereon.[4] Also submitted as evidence were other government files tending to establish the authenticity of the 1950 date on the document.[5]

The Government's evidence amply supports the district court's finding of fact that the Kelly memorandum was a valid and authentic document. This finding may not, as appellants recognize, be set aside on appeal. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562 (1946). Appellants, however, seem to contend that a new hearing should be ordered on their motion because they say they were not afforded a full and fair hearing below. This contention is based on the denial by the court below of their discovery motion made 4 days before the scheduled hearing was to begin.[6] The denial of their

posed of many pieces of bent wire). Several such designs are affixed to a "dandy roll," a hollow tubular roller about six feet long. When the dandy roll makes contact with the wet paper, the raised design forces water out of the paper leaving a watermark imprint.

4. Mr. Kelly's secretary, Thelma Louise Spencer McLaughlin, was able to identify the questioned document as her typing from a number of details peculiar to her style and spacing. She testified that the document was typed on October 16, 1950, the date it bears, from the fact that she had never back-dated any document. Until her marriage, in 1951, it was Mrs. McLaughlin's practice to use the initials of her maiden name, "TLS"; thereafter she used the initials "TM," never reverting to "TLS." The Government produced three carbon copies of the memorandum, each of which bears the pre-1951 initials "TLS." (The ribbon copy of the memo—i. e., the questioned document itself—consistent with Mrs. McLaughlin's practice at the time, bears no initials). Mrs. McLaughlin was able to remember the Capital Transit investigation because of the stenographic work and office conversation it generated. Indeed, she recalled Wolfson's arrival for the very interview recorded in the memorandum, since Wolfson "was about the second millionaire I had ever seen in my life." Finally, Mrs. McLaughlin identified Mr. Kelly's signature on the ribbon

copy of the memorandum, on the three carbon copies, and on cover letters attached to each of the carbon copies. Judge Palmieri summarized his estimate of Mrs. McLaughlin and of her testimony, as follows, 297 F.Supp. 881, at 883:

Mrs. McLaughlin, now the mother of three children, has long been separated from government service and was a credible, disinterested and persuasive witness. Indeed, the impact of her testimony was dramatic. She was not cross-examined and her testimony was not impugned. Standing alone, Mrs. McLaughlin's testimony would be sufficient to establish that the questioned memorandum of interview was indeed prepared and filed in October 1950, following the interview with Mr. Wolfson, and that the document was not fabricated * * *.

5. Three carbon copies of the Kelly memorandum were found in three different long undisturbed files of the Commission.

6. Appellants' motion for discovery requested:
* * * an order directing the United States Attorney to make available to counsel for defendant Wolfson for inspection and copying, at a place and hour to be agreed upon by the parties, the following documents, memoranda and materials:
1) The public file of the Securities and Exchange Commission relating to any investigation of Capital Transit Com-

motion for discovery, appellants argue, prevented them from effectively presenting their direct case and from cross-examining government witnesses. There is no merit to appellants' contentions.

In some instances when possible exculpatory evidence not known by a defendant to exist at the time of trial is later shown to have then been in the Government's hands and the information necessary to develop fully the exculpatory nature of the evidence must be obtained from government sources it might be improper for a district judge to deny a motion for discovery when coupled with a timely motion for a new trial, cf. Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Such was not the case here. In the first place, the appellants' discovery motion was overly broad in scope [7] for it sought disclosure of items and persons not normally available to a defendant in a criminal case before standing trial upon the crimes charged and before the persons had testified in open court against him. See 18 U.S.C. § 3500; United States v. Covello, 410 F.2d 536 (2 Cir. Mar. 24, 1969), pet. cert. filed June 13, 1969, citing S.Rep.No. 981, 85th Cong. 1st Sess. (1957), 1957 U.S.Code Cong. & Admin.News, p. 1861; Federal Rules Criminal Procedure Rule 16(b). For example, demands 7 and 8 called for names and addresses of potential government witnesses, information not generally available, except in capital cases, 18 U.S.C. § 3432, to the defense before trial. 18 U.S.C. § 3500. E. g., United States v. Burgio, 279 F.Supp. 843, 846–847 (S.D.N.Y.1968); United States v. Elife, 43 F.R.D. 23, 24 (S.D.N.Y.1967); C. Wright, Federal Practice and Procedure § 129 (1969). And demands 2, 4, 6, 9, 10, and 11 call for production of

pany during the period November, 1949 to August, 1956;

2) The non-public file of the Securities and Exchange Commission relating to any investigation of Capital Transit Company during the period November, 1949 to August, 1956;

3) The eight page memorandum to the files of the Securities and Exchange Commission, dated October 16, 1950, bearing the purported signature of E. Russell Kelly which was admitted into evidence during the trial of this case as Government Exhibit #21;

4) The file of the Securities and Exchange Commission in which the memorandum described in 3 *supra*, was located and from which it was taken prior to the trial of the case;

5) Any and all carbon or photostatic copies of the memorandum described in 3 *supra*;

6) All files of the Securities and Exchange Commission which contain carbon or photostatic copies of the memorandum described in 3 *supra*, or from which copies of said memorandum have been taken during the past five years;

7) The name, home address, present employment and office address of any person or persons known to the Government to have any knowledge concerning the preparation of the memorandum described in 3 *supra*;

8) The names, home addresses, present employment and business addresses of all persons known to the Government who had custody of the memorandum described in 3 *supra*, or who had custody of the file or files containing said memorandum, from October 16, 1950 to the present, indicating the inclusive dates during which each had such custody;

9) Any and all memoranda, paper writings, deposition, tape recordings, transcripts or other documents which relate to an interview or discussion allegedly had between an agent or agents of the United States Government and Mr. Louis E. Wolfson on or about October 16, 1950;

10) Any and all memoranda, paper writings, depositions, tape recordings, transcripts or other documents which relate to any interview or discussion by any agent of the United States Government with Mr. Louis E. Wolfson concerning the Capital Transit Company during the period when defendant Wolfson was a principal thereof;

11) Any and all paper writings, letters, memoranda or other documents contained in the files of the Securities Exchange Commission which bear a date in the year 1950, and which the Government contends contains the same watermark as appears on the memorandum described in 3 *supra* (Government Exhibit 21).

7. See Note 6, *supra*.

internal government documents specifically exempted from discovery even under the liberal provisions of Fed.R. Crim.P. 16(b).[8] Second, even before the new trial motion was made to the district court the Government had permitted the appellants' experts to study and photograph the questioned document. Third, during the hearing Judge Palmieri directed the Government to make numerous documents accessible to appellants' experts for examination over a weekend recess. Pursuant to that direction, the experts spent some eight hours examining the ribbon copy of the Kelly memorandum, the three carbon copies of that document, eleven other documents bearing Kelly's signature, and various other documents typed by Kelly's secretary who testified at the hearing. Fourth, Judge Palmieri reviewed *in camera* confidential investigative files of the SEC, offered to the parties additional documents containing Kelly's signature, and produced for the appellants all the documents from those SEC files which had "some peripheral probative value" to the issues at hand. Additionally, Judge Palmieri also turned over to the defense documents from the files of the Assistant United States Attorney who had originally prosecuted appellants. In view of all the documents that the court furnished appellants their claims of prejudice resulting from the denial of their discovery motion are completely without merit. Moreover, see footnote 4, *supra*, the testimony of Mrs. McLaughlin, who was not cross-examined and whose testimony was in no way impugned, so conclusively established the

validity of the allegedly "spurious" document that even if, *arguendo*, there had been an abuse of the trial judge's discretion in denying the late-filed discovery motion, discovery would have been of no benefit to appellants. With the documents and information made available to appellants by both the court and government counsel appellants were afforded a full hearing upon their motion for a new trial and were given sufficient opportunity to substantiate the charges they brought.

Affirmed.

8. The pertinent portion of Rule 16 of the Federal Rules of Criminal Procedure reads:

> (b) Other books, papers, documents, tangible objects or places. Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable. Except as provided in subdivision (a) (2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500. See also note 6, *supra*.