**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Louis E. WOLFSON and Elkin B.**
**Gerbert, Defendants,**

**Louis E. Wolfson, Defendant-Appellant.**

**No. 589, Docket 76–1393.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 19, 1977.

Decided June 3, 1977.

**60**

Victor Rabinowitz, New York City (Herbert Jordan, Rabinowitz, Boudin & Standard, Milton A. Bass, Bass, Ullman & Lustigman, New York City, Bernard Fensterwald, Jr., Fensterwald & McCandless, Washington, D. C., of counsel), for defendant-appellant.

Angus MacBeth, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Audrey Strauss, Asst. U. S. Atty., New York City, of counsel), for plaintiff-appellee.

Before LUMBARD and FEINBERG, Circuit Judges, and COFFRIN, District Judge.*

FEINBERG, Circuit Judge:

In 1966, the Government filed two indictments against Louis E. Wolfson. The first charged violations of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, in connection with the sale of unregistered stock of Continental Enterprises ("Continental"). The second charged, among other things, fraud in the purchase and sale of stock of Merritt-Chapman & Scott Corporation ("Merritt-Chapman"). Thus began a series of trials and appeals that have spanned more than a decade and have now involved six decisions by panels of this court alone. This appeal stems from the denial by the United States District Court for the Southern District of New York, Edmund L. Palmieri, J., of Wolfson's petition for a writ of error coram nobis and his motion for the recusal of Judge Palmieri. The background of the coram nobis petition is extensive, but for the purposes of this appeal, we need present it only in summary form.

Wolfson was found guilty on all counts in the Continental case after a three-week jury trial presided over by Judge Palmieri.[1] This conviction was affirmed, 405 F.2d 779 (2d Cir. 1968), cert. denied, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969), as was a later denial of a motion for a new trial. 297 F.Supp. 881 (S.D.N.Y.1968), aff'd, 413 F.2d 804 (2d Cir. 1969). Judge Palmieri was also assigned to preside over the trial of the Merritt-Chapman case, and Wolfson unsuccessfully sought to have the judge disqualified. *Wolfson v. Palmieri,* 394 F.2d 7 (2d Cir. 1968) (motion dismissed for lack of jurisdiction); *id.,* 396 F.2d 121 (2d Cir. 1968) (motion dismissed on the merits). Afterwards, the jury found Wolfson guilty, but the conviction was reversed on appeal. 437 F.2d 862 (2d Cir. 1970). Two retrials were held before Inzer B. Wyatt, J., but neither jury could reach a verdict, and Wolfson eventually pleaded nolo contendere to a felony.[2]

In 1975, Wolfson filed a voluminous coram nobis petition which raised many points touching on both the Merritt-Chapman and the Continental cases.[3] The petition was

---

[1]. Wolfson received concurrent one year sentences, was fined $100,000, and the costs of prosecution were imposed upon him. He completed his sentence in 1970. Coram nobis is, however, available to test the validity of sentences completely served. See *United States v.*

*Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

[2]. He was fined, and execution of an 18-month sentence was suspended.

[3]. The coram nobis petition sought either a new trial or a vacation of the conviction and dismissal of the charges in the Continental case.

assigned to Judge Palmieri, and Wolfson moved for his recusal, primarily on the ground that the judge might be called as a witness during the coram nobis proceedings. The motion was denied. Wolfson then moved for reconsideration, this time emphasizing bias and prejudice as a ground for recusal. Reconsideration was granted, but the motion was denied. Subsequently, Judge Palmieri ruled against Wolfson on the merits of his coram nobis petition.[4] Wolfson now appeals from the denial of his coram nobis petition and his recusal motion.

I

*The Recusal Motion*

■ As the preceding chronology indicates, Wolfson unsuccessfully sought recusal of Judge Palmieri before the Merritt-Chapman trial began, and many of the issues then raised and considered by this court have surfaced again on this appeal. As before, Wolfson supports his claim of bias by pointing to various rulings and comments made by the judge during the Continental trial and to the sentence and high bail set in that case. See 396 F.2d at 125. He also points to evidence of alleged bias not previously presented, such as the judge's failure to postpone the sentencing date in the Merritt-Chapman case despite the fact that Mrs. Wolfson was fatally ill at the time, and the judge's conduct of the proceedings on this coram nobis petition—in particular, his requirement that Wolfson's counsel file an affidavit indicating, among

other things, the issues in the petition that had not been previously litigated. According to Wolfson, the antagonism between himself and Judge Palmieri is exemplified by a telegram Wolfson sent to the judge after the Merritt-Chapman sentencing, in which he pledged "to do everything to have you [Judge Palmieri] removed from the bench . . . ."[5] During the course of this coram nobis proceeding, Wolfson wrote a similar letter to the New York Times which accused the judge of participating in a "scheme to frame" him. The letter was never published, but Wolfson sent a copy of it to the judge. Wolfson argues that this evidence, considered as a whole, shows that Judge Palmieri, whether justifiably provoked or not, "has lost the objectivity which must be maintained by a court." At the least, he claims that it raises a reasonable question of the judge's bias and that recusal is therefore required by 28 U.S.C. § 455.

Recusal of federal court judges is governed by two statutes, 28 U.S.C. §§ 144 and 455.[6] Section 144, reproduced in the margin,[7] deals with the recusal of district court judges for "personal bias or prejudice" and sets forth detailed procedural requirements, such as the timely filing of an affidavit of prejudice, that must be followed in order to bring the recusal motion before the court. See *Wolfson v. Palmieri,* supra, 394 F.2d 7. Section 455 is more comprehensive, and was amended by Congress in 1974 to "broaden and clarify the grounds for judicial disqualification." Pub.L. No. 93–512, Preamble.

The petition did not seek relief from the judgment in the *Merritt-Chapman* case.

4. Unpublished Memorandum Opinion, Dkt. No. 66 Crim. 720 (July 26, 1976).

5. This telegram was sent shortly after the death of Wolfson's wife which occurred the day after the sentencing.

6. A third statute, 28 U.S.C. § 47, provides that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him."

7. Section 144 reads:
Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

As amended, § 455 closely follows the provisions of Canon 3C of the American Bar Association's Code of Judicial Conduct,[8] and contains a general, objective standard requiring a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. 455(a).[9] Unlike its predecessor, the new § 455 deals directly with disqualification due to personal bias. Id. § 455(b)(1). As a result, § 455 now subsumes the subject matter of § 144, and the interaction between the two statutes is as yet unclear.[10] For instance, in this case the Government argues that the procedural requirements of § 144 apply to a claim of bias under § 455 and that Wolfson has not complied with them.[11] We need not reach those issues, however, for even if we assume arguendo that Wolfson's claim of bias is properly before us under § 455, the claim fails even under the standards of that section.

Both §§ 455(b)(1) and 144 refer to "*personal* bias" as triggering the requirement of recusal. (Emphasis supplied). And the cases construing both these sections have consistently held that for an alleged bias to be "personal," it "must stem from an extrajudicial source . . . ." *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966) (interpreting § 144); accord with respect to § 455, *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044, 1051–52 (5th Cir. 1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Lazofsky v. Sommerset Bus Co.,* 389 F.Supp. 1041, 1044–45 (E.D.N.Y.1975). Here, all of Wolfson's charges of bias against Judge Palmieri arise out of the judge's conduct of the legal proceedings before him. The only exceptions to this are the telegram and letter sent by Wolfson after his sentencing in the Merritt-Chapman case and during the coram nobis proceedings. But these only establish Wolfson's feelings towards Judge Palmieri, not the reverse. Cf. *In re Union Leader Corp.,* 292 F.2d 381, 389 (1st Cir. 1961).

---

**8.** See generally Note, Disqualification of Federal Judges for Bias under 28 U.S.C. § 144 and Revised Section 455, 45 Fordham L.Rev. 139, 146–47 (1976); Note, Disqualification of Judges and Justices in the Federal Courts, 86 Harv.L. Rev. 736 (1973); Frank, Commentary on Disqualification of Judges—Canon 3C, 1972 Utah L.Rev. 377.

**9.** The relevant provisions of 28 U.S.C. § 455 read:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall *disqualify himself in any proceeding in which his impartiality might reasonably be questioned.*

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . . .

**10.** See Fordham Note, supra, at 148–59. The legislation amending the disqualification provisions, the "Bayh" bill, originally contained a revision of § 144 as well as § 455. The proposed amendment to § 144 would have clarified the relationship between the sections, and it also contained a provision allowing peremptory challenges to district court judges. The amendment was withdrawn, see Hearings on S.1064 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 93d Cong., 1st Sess. 76 (1973). See also Frank, Disqualification of Judges: In Support of the Bayh Bill, 35 Law & Contemp. Problems 43 (1970).

**11.** Section 455 is a self-enforcing provision that is directed towards the judge, but may be raised by a party. See *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044, 1051–52 (5th Cir. 1975); 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3550 (1975 ed.). Unlike § 144, § 455 does not require that an affidavit of bias be filed as a procedural prerequisite; in fact, § 455 is "wholly silent about procedure . . . ." 13 Wright, supra, at § 3550. The Government argues that if § 455 may be raised by a party to assert a claim of personal prejudice cognizable under § 144 without filing an affidavit of prejudice, then § 144 will be effectively overruled. As yet, no appellate court has squarely faced this issue, although there are some cases lending support to the Government's position that an affidavit of bias must be filed where §§ 455 and 144 overlap. Cf. *Samuel v. University of Pittsburgh,* 395 F.Supp. 1275, 1277 (W.D.Pa.1975); *Harley v. Oliver,* 400 F.Supp. 105, 110 (W.D.Ark.1975); but see Fordham Note, supra, at 153–54. Wolfson argues that even if an affidavit is required, he has complied since his verified petition is the equivalent of an affidavit.

Moreover, a prior panel of this court has extensively examined Judge Palmieri's conduct of the Continental case, including the allegedly excessive bail and sentence, and found "nothing to suggest bias or prejudice" or proper "grounds for disqualification." 396 F.2d at 125. True, Wolfson now rests his claim on bias in part on events never considered by the prior panel. As to those events stressed before us, the record shows that Judge Palmieri's timing of the sentencing in the Merritt-Chapman case was based on the report of Mrs. Wolfson's doctor that Mrs. Wolfson's condition had improved somewhat. Similarly, Judge Palmieri's order requesting clarifying affidavits in the coram nobis proceedings was not unreasonable in light of the lengthy and complex history of the case and a significant error in the coram nobis papers.[12]

Wolfson argues that the new § 455(a) is meant to make it easier to disqualify a judge whenever his "impartiality might be reasonably questioned." See 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3542 at 346 (1975 ed.). We recognize that § 455(a) is designed to negate the "duty to sit" notion [13] and to allow "a greater flexibility in determining whether disqualification is warranted in particular situations." *United States v. Ritter*, 540 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976). Also, we do not read the authorities referred to above as holding that a judge's conduct of proceedings before him can *never* form a basis for finding bias. See *Wolfson v. Palmieri,* supra, 396 F.2d at 124–25; 13 Wright, supra, at 352–53. But having said all that, we do not in good conscience think that Judge Palmieri had to disqualify himself on the coram nobis petition. We cannot disregard the action of the prior panel on the same claim based in large part on the same record, even though the standard for recusal has since changed. There is a broad reference to the "duty to sit" idea in the prior panel's decision, 396 F.2d at 124 (quoting *Rosen v. Sugarman,* 357 F.2d 794, 797–98 (2d Cir. 1966)). That was not the basis of the decision, however, and there is no indication that the prior panel felt compelled because of the old law's more restrictive test to deny recusal. Wolfson would undoubtedly rejoin that he is not asking us to reverse the prior decision, but only to take the prior record into account in connection with the recusal motion addressed to the coram nobis petition years later. We have done so to the extent we think appropriate. But as indicated, we do not believe that the change in standards would have affected the prior decision, and the determination of that panel on the record before it, therefore, carries

12. The coram nobis petition claimed that Judge Palmieri impaneled the grand jury that indicted petitioner and that Judge Palmieri selected a personal acquaintance of his as foreman of the jury. The petition then asked whether Judge Palmieri "normally act[ed] as trial judge on cases that arose out of indictments handed down by 'his' grand juries?"

In fact, Judge Palmieri did not impanel the grand jury, and the judge took this significant error as a sign that counsel, who had not represented Wolfson during the previous proceedings, had prepared the coram nobis petition, "with little familiarity" with the documents in the case. Given the complexity of the case and the lengthy coram nobis petition, which raised many issues that had been previously litigated, see note 25, infra, the judge's order requesting affidavits indicating which issues in the petition were being litigated for the first time was not unreasonable. The order, and its subsequent revision by the judge in which he required that counsel indicate what documents were missing from the clerk's files and why, certainly imposed a considerable burden on counsel, but were not sufficiently demonstrative of any personal bias on the judge's part. In this connection, it is apparent from the record that a moderate amount of friction developed between the court and Wolfson's counsel on the coram nobis petition, stemming in large part from the order to clarify the issues presented in the petition. We do not believe that such friction was indicative of any personal bias against Wolfson.

13. Subsection (a) of the amended section 455 contains the general, or catch-all, provision that a judge shall disqualify himself in any proceeding in which "his impartiality might reasonably be questioned." . . . The language also has the effect of removing the so-called "duty to sit" which has become a gloss on the existing statute.

H.R.Rep. No. 93–1453, 93d Cong., 2d Sess. 5.

great weight with us.[14] And for the reasons given above, the later events simply do not afford a reasonable basis for suspecting bias.[15]

We understand that regardless of a court's fairness, a defendant who has undergone two lengthy trials before the same judge, both of which ended in guilty convictions, may come to consider that judge as biased against him. These suspicions are understandable, but, without more, they do not provide a reasonable basis for questioning a judge's impartiality. On oral argument, appellant pointed to the "general rule" of the First Circuit of assigning certain categories of § 2255 petitions automatically to other judges. See *Halliday v. United States,* 380 F.2d 270 (1st Cir. 1967), aff'd on other grounds, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); but cf. *United States v. Cowden,* 545 F.2d 257 (1st Cir. 1976). Whatever the overall merits of this approach, and we do not underestimate them, see generally 2 Wright, Federal Practice and Procedure, supra, § 600 at 631–32 (1969 ed.) and at 276 (1976 supp.), we do not believe that § 455(a) requires such a rule for § 2255 or coram nobis petitions where

there is a claim of bias. Cf. *United States v. Cowden,* supra. It may well be that such a rule, or something similar but more limited,[16] would be useful in the future. Such a practice would, at the very least, render unnecessary the considerable time and effort expended by the district court and by this court on the issue here and allow all concerned to focus exclusively on the merits of the collateral attack.[17] But in the absence of such a pre-existing practice, there is no sound basis for reversal here. In short, we conclude that there is nothing in Judge Palmieri's conduct in the Continental, Merritt-Chapman and coram nobis proceedings to give rise to a reasonable suspicion of bias.

## II

Having decided that Judge Palmieri could properly deal with the coram nobis proceeding, we turn to the claims presented in the coram nobis petition itself. On appeal, Wolfson has pressed only three of these claims, one of which—a *Brady* claim—he has since abandoned.[18] Both remaining claims allege violations of Wolf-

---

**14.** On this appeal, Wolfson has relied on this court's ruling in *United States v. Simon,* 393 F.2d 90 (2d Cir. 1968), as providing a rationale for recusal. This same argument was made to the prior panel, and we agree with their determination that *Simon* is not controlling on these facts. See 396 F.2d at 126.

**15.** We would reach this conclusion whether we judged the reasonableness of the suspicion from the perspective of the litigant himself or from that of a reasonable man. See *Parrish v. Board of Commissioners of Alabama State Bar,* 524 F.2d 98 (5th Cir. 1975) (en banc), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *United States v. Cowden,* 545 F.2d 257 (1st Cir. 1976).

**16.** Cf. *Grinnell,* supra, where Judge Wyzanski referred a recusal motion to Chief Judge Woodbury of the First Circuit; after decision on that motion, 384 U.S. at 582–83 n. 13, 86 S.Ct. 1698, Judge Wyzanski then tried the case. See generally Note, Disqualification of Judges for Bias in the Federal Courts, 79 Harv.L.Rev. 1435, 1439 (1966); Fordham Note, supra, at 159 and n. 141; Comment Disqualification of Federal District Judges—Problems and Proposals, 7 Seton Hall L.Rev. 612, 636–38 (1976).

**17.** Moreover, it is always open to a judge, as we pointed out in *Wolfson v. Palmieri,* supra, 396 F.2d at 125, to step out voluntarily. This advice is even more practical now, since the duty to sit notion has been removed from the statute, see note 13, supra, and no opprobrium should result from a judge who in good conscience chooses not to sit, even though the claim of bias is legally insufficient. See ABA Standards Relating to Post-Conviction Remedies § 1.4(c). We do not suggest that there should be further proceedings in this case, but if they do occur, the preceding advice should apply.

We do not now face the question whether, pursuant to our supervisory powers, we should adopt a rule preventing the same judge from presiding over a criminal trial where the defendant has already been convicted on other charges in a trial before the same judge. Cf. *United States v. Robin,* 553 F.2d 8, 9 and n. 1 (2d Cir., 1977) (en banc).

**18.** Wolfson argued that portions of the testimony given by John Morley before the Securities and Exchange Commission were not turned over to the defense. He now concedes that this material was made available to counsel at the appropriate time.

son's right to effective assistance of counsel. Appellant contends that he was deprived of effective counsel because his personal counsel appeared before the grand jury that indicted him and because his lead counsel at the Continental trial was the subject of an alleged Government criminal investigation into that lawyer's stock activities. The district court rejected these claims, as well as the others presented by the petition, on the merits and on the ground that the petition should be dismissed with prejudice pursuant to Fed.R. Civ.P. 41(b) for failure to follow the court's directions. See note 12, supra. Since we find that dismissal of the petition under Rule 41(b) was, under the circumstances, too severe a sanction, see *International Building Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1338–39 (9th Cir. 1970); 5 Moore's Federal Practice, ¶ 41.12 (1976–77 Supp.), we must review the merits of the claims.

■ With respect to Wolfson's argument that he was denied effective counsel because of Government investigation involving his lead counsel at trial, the coram nobis papers alleged only that Wolfson "has reason to believe" that there was a criminal investigation against that attorney.[19] Appellant presented no evidence that the attorney was aware of such an investigation, if it in fact existed. No affidavit from the attorney was submitted, nor was there any explanation of why one was unavailable. In short, appellant's petition presented little, aside from his own speculations, in support of the claim, and on this record he was not entitled to a hearing on the issue. See *United States v. Tribote,* 297 F.2d 598, 601 (2d Cir. 1961).

■ Appellant's argument concerning the appearance of his personal counsel be-

fore the grand jury that indicted him requires more discussion. Although this claim was raised below, it was not emphasized or phrased in the same terms in the coram nobis petition, and the district court treated it as part of Wolfson's general complaint over the ineffectiveness of his counsels' strategic decisions.[20] As more fully explicated on appeal, Wolfson's assertion is that "the Fifth and Sixth Amendments protect a criminal defendant from grand jury inquiry into the work of defense counsel," and that violation of that principle should result in the dismissal of the indictment.

We are sensitive to the grave dangers posed when counsel appears before the same grand jury that indicted defendant. See *In re Terkeltoub,* 256 F.Supp. 683 (S.D. N.Y.1966); *United States v. Colacurcio,* 499 F.2d 1401, 1404 (9th Cir. 1974). We also recognize that the potential disclosures "touch upon a vital center in the administration of criminal justice, the lawyer's work in investigating and preparing the defense of a criminal charge." *In re Terkeltoub,* supra, 256 F.Supp. at 684. See also *United States v. Nobles,* 422 U.S. 225, 237, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), quoting *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Nevertheless, on this record, we cannot hold that the judge erred in denying a hearing on this issue. Although we have cautioned against the abuses that may result, cf. *Matter of Doe,* 546 F.2d 498, 502 (2d Cir. 1976), the Government has the right to call an attorney before the grand jury and question him on unprivileged matters. See *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919); *In re Grand Jury Subpoena Served Upon Doe,* 551 F.2d 899 (2d Cir. 1977); *In re Kinoy,* 326 F.Supp. 400 (S.D.N. Y.1970). In this case, the lawyer was not only the personal attorney of defendant,

---

**19.** In this court, appellant's counsel relies on information given to counsel by an unnamed Department of Justice attorney. Defendant-Appellant's Brief at 21. The Government points out that "not even this slim foundation to the charge" was included in the petition.

**20.** Wolfson's coram nobis petition contains a general claim in the section dealing with inef-

fective assistance of counsel that his counsels' preparation and conduct of his case were "grossly negligent." In this connection we note that, at the time of the Continental trial, Wolfson was aware that his attorney had appeared before the grand jury, and yet this is apparently the first time this issue has been raised in almost ten years.

but also general counsel to some of the corporations involved in the grand jury investigation.[21] Cf. *In re Grand Jury Investigation*, 412 F.Supp. 943 (E.D.Pa.1976). Furthermore, the ordinary presumption that a lawyer is competent to protect his client's confidential interests before the grand jury, see *Kinoy*, supra, 326 F.Supp. at 402; *United States v. Mackey*, 405 F.Supp. 854, 865 (E.D.N.Y.1975), is even stronger in a coram nobis proceeding where the petitioner bears the burden of overcoming the presumption of regularity in the challenged proceedings. See *United States v. Morgan*, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Here, according to the coram nobis petition, Wolfson's counsel claimed to have "invoked the attorney-client privilege where appropriate," and there is nothing to indicate that this is not so. And even if there were a violation of the attorney-client privilege, appellant concedes that he is unable to find any case in which such a violation has resulted in dismissal of an indictment or even in a new trial. Nor are we aware of any such case.[22] See the thorough opinion of Judge Weinstein in *United States v. Mackey*, supra, 405 F.Supp. at 860–67. In short, appellant's claim on this issue had insufficient factual support or likelihood of ultimate success, and the district court did not err in denying a hearing.

Finally, we turn to the remaining claims in the coram nobis petition that have not been pressed on appeal, including arguments that the grand jury was biased against petitioner [23] and that the trial was tainted by prosecutorial misconduct.[24] These claims were carefully considered in Judge Palmieri's thorough opinion, and we need not review them in any detail. We note, as did Judge Palmieri, that many of the claims have been previously raised in this or similar form by the petitioner and considered by this court,[25] and we agree with the disposition of the district court.

The judgment of the district court is, accordingly, affirmed.

---

**21.** Counsel was also an unindicted co-conspirator in the Merritt-Chapman case.

**22.** The cases raising the issue of defense attorney's appearance before a grand jury have arisen either in the context of a claim of privilege first raised during the grand jury proceedings, see *In re Terkeltoub*, supra, or prior to trial, see *United States v. Colacurcio*, supra; *United States v. Colasurdo*, 453 F.2d 585, 595–96 (2d Cir. 1971). Wolfson argues that in those cases the court could protect the defendant's rights through means less drastic than the dismissal of the indictment; e. g., by ruling that counsel need not testify or that the evidence obtained from counsel be suppressed. But in this case, he argues, dismissal of the indictment may be the only appropriate relief. We believe, however, that Wolfson's argument here misconceives the fundamental distinction between the "status of the [attorney-client] privilege at trial and before the grand jury . . . ." *United States v. Mackey*, supra, 405 F.Supp. at 861; see also *United States v. Colasurdo*, supra. As the Supreme Court has indicated, the fact that a witness may be able to assert a testimonial privilege before the grand jury does not lead to the conclusion that a violation of the privilege may be grounds for dismissing the indictment. See *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

**23.** The allegations of grand jury partiality were based primarily on the alleged friendship between the foreman of the grand jury and the United States Attorney, and the Assistant United States Attorney on the case. In response, the Government submitted affidavits from the foreman and from the United States Attorneys involved, indicating the very limited nature of their acquaintance.

**24.** On the issue of prosecutorial misconduct, the petition claims, among other things, that the Government threatened witnesses, that it knowingly used perjured testimony, that it assigned Judge Palmieri's former law clerk to the prosecution staff, creating a conflict of interest, and that it discriminatorily prosecuted petitioner on the basis of an SEC "enemies" list.

**25.** E. g., the claims relating to Judge Palmieri's former law clerk, 396 F.2d at 123; the use of perjured testimony from John Morley, Appellants' Reply Brief, *United States v. Wolfson and Gerbert*, 2d Cir., Dkt. No. 31993 at 20–21; and misleading the jury, Appellants' Main Brief, *United States v. Wolfson and Gerbert*, supra, at 24–26. Also, in an attachment to his affidavit of November 7, 1975, Wolfson's counsel on this coram nobis petition stated that he "believe[d]" that the issues of discriminatory prosecution and the intimidation of witness Henry Steeger had been previously litigated.