577 F.2d 754
 UNITED STATES of America, Plaintiff-Appellee,
v.
Orlando M. CEPEDA PENES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Herminio CORTES RIVERA, Defendant-Appellant.
 Nos. 77-1114, 77-1177.
 United States Court of Appeals,
First Circuit.
 Argued Feb. 7, 1978.
Decided May 16, 1978.
 
 Jose Enrique Amadeo, Hato Rey, P.R., with whom Santos P. Amadeo and Luis D. Flores Gonzalez, Rio Piedras, P.R., were on brief, for Orlando M. Cepeda Penes, appellant.
 John L. A. C. de Passalacqua, Isla Verde, P.R., with whom Joaquin Monserrate Matienzo, Isla Verde, P.R., was on brief, for Herminio Cortes Rivera, appellant.
 Jose A. Quiles, Asst. U. S. Atty., with whom Julio Morales Sanchez, U. S. Atty., San Juan, P.R., was on brief, for appellee.
 Before COFFIN, Chief Judge, MOORE* and CAMPBELL, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 After a jury trial, defendants Herminio Cortes Rivera (Cortes) and Orlando M. Cepeda Penes (Cepeda), were convicted of possessing with intent to distribute about 170 pounds of marijuana. Cepeda was also convicted of importation of the drug; Cortes was acquitted on that count. Both defendants have filed separate appeals from the judgments of conviction entered against them; Cortes also appeals from an order denying a motion for a new trial predicated on the alleged disqualification of one of his trial jurors. We find no merit to any of appellants' numerous claims of error, and we affirm.
 
 I.
 
 2
 While working at Puerto Rico's Isla Verde Airport on December 3, 1975, Customs Patrol Officer Carlos Flores had occasion to inspect appellant Cepeda's luggage when the latter returned to Puerto Rico from a trip to Colombia.[1] The officer found one seed and some scraps that looked to him like marijuana. He handed the seed to another agent who, after inspecting it, apparently threw it away. Apparently, because Cepeda was well-known to the Puerto Rican community as a baseball star, and because the quantity found was negligible, no action was then taken. However, by reason of this incident, the agents' suspicions were aroused, and they initiated a monitor on any package addressed to Cepeda originating from Colombia.
 
 
 3
 The officers' suspicions were borne out, for on December 12, two parcels and two suitcases awaited Cepeda at the airport. The Government had determined that the parcels contained marijuana by the time Cepeda arrived at the airport on that day, along with defendant Cortes, who appeared in a separate vehicle. Prior to obtaining the parcels, Cepeda apparently went to the Airport's Excise Tax Office. Thereafter, he placed one of the parcels in the rear of his car, and Cortes put the other parcel in his own trunk after being called over to the scene by Cepeda. The latter also placed the suitcases in the rear seat of his own vehicle.
 
 
 4
 At this juncture, Government agents who were observing the events arrested the two men and gave them Miranda warnings. Both signed acceptances thereof.
 
 
 5
 After their arrest, the defendants were kept at the airport while the evidence was being marked. Two hours later, at about midday, they were taken to the office of the Drug Enforcement Agency for booking. Subsequently, at about 4:00 or 5:00 in the afternoon, they were taken to a magistrate. During this period, according to various Government witnesses, both defendants made incriminatory statements which were admitted against them at trial.
 
 II.
 
 6
 Prior to trial, both defendants, then represented (with the consent of both) by the same attorney, expressed a desire to plead nolo contendere to Count 1 of the indictment, the importation count. Cortes actually entered the plea, but withdrew it because of the events which followed, now urged as a ground for reversal of the convictions.
 
 
 7
 After Cortes entered his plea, the district judge, prior to accepting that plea, addressed Cortes, inquiring of him: "(D)o you understand that this Court need not accept your plea unless the Court is satisfied that you are guilty and that you fully understand your rights?" At this point, defense counsel interrupted the questioning to press the point he had earlier discussed with the judge that the judge need not, and should not, inquire of the defendant as to his actual culpability in regard to a plea of nolo contendere. According to defense counsel, although Fed.R.Crim.P. 11 requires a judge to establish a factual basis for a plea of guilty, the same is not true, under the Rule, for a nolo plea. The judge then noted that, to him, a plea of nolo "means the same thing as a plea of guilty only that there has a certain provisal (sic) that whatever is admitted during the Nolo Contendere cannot be used in civil proceedings". He continued:
 
 
 8
 "There is one more difference which is; that there is no need for the Court to establish a basis in fact from the manifestation of the defendant and the Court may very well satisfy that issue with . . . whatever the government announces it has. But in as much as the effect of the plea it is the same, I certainly have to find . . . that the defendant was in fact involved in the offense charged in the first count of the indictment."
 
 
 9
 After the judge thus stated his intent to establish a factual basis for the plea, defense counsel immediately moved to have the plea withdrawn.
 
 
 10
 The judge's refusal to accept the plea of nolo contendere before first extracting admissions of guilt from the defendant is assigned as reversible error. We disagree. First, it is not at all clear from the record that the judge was unwilling to establish a factual basis for the plea by inquiring of the Government as to its evidence against the defendant. As such, no incriminating statements would have been elicited from the defendant. Second, although it is true, as defendant argues, that Rule 11 does not require a judge to establish a factual basis for a nolo plea, neither does it expressly preclude such inquiry. While it may be desirable, in some cases, for a judge to permit a defendant to plead nolo without requiring a factual basis, see North Carolina v. Alford, 400 U.S. 25, 35-36 n. 8, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), Rule 11 does not prohibit a judge from exercising his discretion in determining whether to accept such a plea and imposing conditions on its acceptance, subject to review only for abuse of discretion. See United States v. Gratton, 525 F.2d 1161, 1163 (7th Cir. 1975), application denied, 423 U.S. 1067, 96 S.Ct. 1090, 46 L.Ed.2d 658 (1976); cf. United States v. Biscoe, 518 F.2d 95 (1st Cir. 1975) (trial judge is under no obligation to accept a guilty plea); United States v. Bednarski, 445 F.2d 364 (1st Cir. 1971). While the trial judge may have acted under an erroneous view of the law in this case, his refusal to accept the plea without requiring a factual basis therefor is not a basis for reversal, for acceptance of a nolo plea is solely a matter of grace, something to which defendants are by no means automatically entitled. Appellants have demonstrated no abuse of discretion, especially since the record shows that they cut short the plea colloquy prior to hearing the trial judge's explanation of how a factual basis might be established. Had they permitted the judge to continue, he could well have assured the defendants that the facts would be sought from the Government rather than from the defendants. Indeed, in response to defendants' motion for disqualification of the trial judge, which followed the plea incidents and which we discuss below, Judge Pesquera stated that he was in fact ready to satisfy himself of defendants' involvement by means of the Government's evidence. In any event, appellants were not entitled to have their nolo pleas accepted by the court, and we find no reason for reversal on this ground.III.
 
 
 11
 Shortly after the plea incident, defendants filed a motion requesting that Judge Pesquera disqualify himself on the ground of his alleged "personal bias or prejudice" against both defendants stemming from the judge's reaction to defendants' attempts to plead nolo contendere. Because Judge Pesquera had indicated that he considered a plea of nolo to be substantially the same, in its effect, as a plea of guilty, the defendants alleged that the trial judge could no longer act impartially. They alleged, too, that, as a result of the hearing at which the plea was withdrawn, headlines appeared in one of Puerto Rico's leading newspapers, indicating that guilt had been once admitted but later denied. Apparently, the defendants thought that if the press was under such an erroneous impression, so must be the judge.
 
 
 12
 The motion was denied, and the denial is claimed as error on this appeal. Cortes argues generally that the judge could not have been impartial, given his knowledge of the plea proceedings. Cepeda points to certain instances of allegedly biased conduct on the part of Judge Pesquera during the trial, including the judge's examination of Cepeda's character witness (which, claims Cepeda, lessened the force of the evidence), the judge's refusal to grant a continuance, and his denial of a motion for a change of venue. Appellant Cepeda claims that all of his motions were wrongly denied because of the "personal bias" of Judge Pesquera, and that reversal is therefore warranted.
 
 
 13
 Again, we disagree. With respect to the "specific instances" of "prejudicially motivated misconduct", we find nothing to support appellants' claims of impropriety. Clearly, it is permissible for a judge to examine a witness to clarify the testimony, and, upon a review of the record, we perceive no other motive on the part of Judge Pesquera.
 
 
 14
 In the case of a denial of a motion for a change of venue, there is no error committed if an impartial jury panel can be convened, and there is no indication whatsoever in this case that the panel was anything but impartial. Indeed, the judge questioned all of the jurors with respect to the newspaper stories that had been published, and ascertained that none was swayed by the possibly false stories they had read. We have no doubt that the voir dire was adequate.
 
 
 15
 Nor do the generalized grounds of attack on the trial judge support appellants' position. Their reliance on the new 28 U.S.C. § 455(a), which provides that a judge shall disqualify himself in a proceeding where "his impartiality might reasonably be questioned", is completely misdirected. In United States v. Cowden, 545 F.2d 257, 265-66 (1st Cir. 1976), cert. denied, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977), this court had occasion to consider the circumstances under which recusal is required pursuant to § 455(a). The standard under § 455(a), we said, was to be judged from the perspective of a reasonable man, 545 F.2d at 265, and as we quoted from the House Report dealing with the newly amended disqualification statute,
 
 
 16
 "(d)isqualification for lack of impartiality must have a reasonable basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice."
 
 
 17
 Id., quoting H.Rep.No.1453, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News at 6355 (emphasis in original).
 
 
 18
 In Cowden, Judge Campbell found no error in the denial of a recusal motion predicated on the fact that Cowden's trial judge had presided over two prior jury trials of four other men indicted with Cowden. According to Cowden, the judge's prior involvement in the case "may have resulted in his learning about facts damaging to Cowden . . . ." 545 F.2d at 265. The court rejected this argument, however, on the ground that no indication of personal animus or bias by the judge had been shown, either in Cowden's proceedings or in those involving his co-defendants. The claim, thought the court, was
 
 
 19
 "not much different from when a presiding judge learns about evidence, later excluded, damaging to a defendant at a voir-dire or bench conference in the same proceeding. While judges attempt to shield themselves from needless exposure to matters outside the record, they are necessarily exposed to them in the course of ruling on the admission of evidence; and the judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case." Id. at 265-66 (emphasis added).
 
 
 20
 In our view, the instant claim rises to the same level as that in Cowden. Trial judges are well aware that a multiplicity of factors enter into any decision to plead to an indictment. Thus, the mere fact that a judge has participated in plea discussions, without more, does not provide a reasonable basis for questioning a judge's impartiality. See United States v. Wolfson, 558 F.2d 59, 61-64 (2d Cir. 1977), in which a denial of recusal in a coram nobis proceeding was affirmed despite the fact that the defendant had undergone "two lengthy trials before the same judge, both of which ended in guilty convictions". Id. at 64. Both Cowden and Wolfson stand at least for the proposition that a trial judge who participates in criminal proceedings, even one who has some knowledge of prior proceedings concerning the defendant, cannot be presumed to be personally biased by virtue of his knowledge alone.
 
 
 21
 We recognize that the newly amended recusal provision, 28 U.S.C. § 455(a), now permits disqualification of judges even if alleged prejudice is a result of judicially acquired information, in contradistinction to the prior law that required a judge to hear a case unless he had developed preconceptions by means of extrajudicial sources. The rationale for the amendments to the statute, as noted in Cowden, supra, 545 F.2d at 265, was "to foster public confidence in the judicial system" by requiring disqualification based on "a reasonable factual basis for doubting the judge's impartiality". H.Rep.No.1453, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News at 6355. However the rationale may be expressed, we do not think that such a "reasonable factual basis for doubting the judge's impartiality" may be inferred solely on the basis that the press may have misinterpreted some action taken during the proceedings.
 
 
 22
 This, of course, is not to say that a judge's participation in prior proceedings in any given case can never form the basis for a finding of bias. Accord, United States v. Wolfson, supra, 558 F.2d at 63. But we require more than mere surmise and conjecture; the defendant must be able to point to some behavior on the part of the judge suggesting that there is, in fact, some friction between the judge and the complaining party not a mere disagreement over the state of the law on any given point. No such facts are alleged in this case. We therefore hold that, on this record, there was no error in denying defendants' motion for recusal.
 
 IV.
 
 23
 Appellant Cortes next argues that the district court erred in denying a new trial on the ground that one of the trial jurors could not sufficiently understand English. The motion for a new trial was filed on December 20, 1976, just four days after appellants' judgment of conviction was entered, and it was predicated on the fact that, although juror Aurea Rodriguez Battistini sat as a juror at appellants' trial, she was excused as a juror at an unrelated trial which commenced on December 17 due to her incapacity to understand English, which is required for jury service in Puerto Rico federal courts.
 
 
 24
 Judge Pesquera denied the motion on the ground that an extensive voir dire had been undertaken at appellants' trial and no challenge was made at that time. Furthermore, upon a review of the transcript of the voir dire at appellants' trial, it was clear that the juror in question answered questions posed to her in English; she was asked approximately fourteen questions and had difficulty only with one.
 
 
 25
 At the subsequent trial at which the juror was excused, the juror was asked about twenty-four questions by the visiting judge (whose native language was not Spanish) assigned to preside at the trial, and she appeared to have difficulty only with four questions. Judge Pesquera, in denying Cortes' motion, stated that he failed to see why the visiting judge thought it necessary to excuse the juror in that case. He felt that appellant had made an insufficient showing of incompetency to warrant the granting of a new trial. We agree.
 
 
 26
 In another Puerto Rico case decided this term, Thornburg v. United States, 574 F.2d 33 (1st Cir., April 19, 1978), this court had occasion to review a similar claim relating to the inability of the trial jurors to sufficiently understand the English language. We stated in Thornburg that there is a "strong policy" against impeachment of jury verdicts on the basis of "afterthoughts" by disappointed litigants, at 35 quoting Peterman v. Indian Motorcycle Co., 216 F.2d 289, 293 (1st Cir. 1954). We noted also that the appellant in that case had been "represented at (his) trial by experienced members of the Bar of Puerto Rico," at 36, who did not challenge, at the time of the trial, any of the jurors on the ground of incompetency in English. Nor had any of the jurors at Thornburg's trial informed the court of any difficulty in understanding the proceedings, as had occurred in United States v. Silverman, 449 F.2d 1341 (2d Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972), and counsel had expressed no alarm at trial after questioning and observing the jurors.
 
 
 27
 In Thornburg, we decided that, by analogy to Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), which turned on the "waiver" provision of Fed.R.Crim.P. 12(b)(2), there must be limitations on the right of a defendant to re-open proceedings when the objection is based on facts that could have, and should have, been pressed at a time when the district court could have acted on the challenge. "Except to avoid clear injustice," stated the court in Thornburg, "we are not disposed to entertain challenges of this nature (i. e., alleged juror incompetence) after the trial." At 36 n.5.
 
 
 28
 We do not think that appellant in the case at bar has brought himself within the "clear injustice" exception recognized in Thornburg which would permit a defendant to challenge the qualification of a juror after the conclusion of the trial. It is clear that every juror was individually interrogated at Cortes' trial and that the juror in question was found fully acceptable to counsel. The fact that this same juror was later excused by a visiting judge (who excused her because of her inability to understand the judge himself perhaps because of his lack of a Spanish accent) does not mean that she could not have been competent to understand the proceedings in Cortes' case. In fact, the transcript of the voir dire establishes no disqualifying incapacity. We decline, therefore, to excuse appellant from his failure to challenge the juror, and hold that he waived whatever objection may have been appropriately raised at the time of the voir dire, if any. The nature of the dual language requirements in Puerto Rico, the fact that Puerto Rican defense counsel are well aware of the problems in juror selection, and sound policy regarding finality of verdicts in the absence of strong reasons to impeach such verdicts, all point to our disposition of this matter. The defense Bar in the Puerto Rico federal courts, as elsewhere, should be on notice that they must make timely objection to matters that are properly raisable during the trial. In the absence of a timely objection, a later occurrence will not be ground for relief unless it is clear that there has been a manifest injustice. This is clearly not the case when a juror is accepted as qualified at a criminal trial and is excused, as a matter of the judge's discretion, at a later trial not touching on the same defendant's concerns. We thus affirm on this point.V.
 
 
 29
 Appellant Cepeda has raised several other points on this appeal, which we discuss briefly: He argues that various statements made by him during the seven hours between the time he was arrested and the time he was taken to the magistrate were admitted at the trial in violation of the fifth amendment. We cannot agree: Miranda warnings were given to the defendants upon their arrest, and were repeated from time to time. It was not shown that the purpose of the delay was to elicit incriminating information, and we conclude that the statements were properly found voluntary and, thus, were admissible at trial.
 
 
 30
 Cepeda next urges that it was error to permit a Customs Agent to testify about finding the marijuana seed in his luggage on December 3 since the seed itself was never introduced into evidence and since no test had been conducted to determine that it was, in fact, marijuana. Cepeda argues that this evidence of "prior uncharged crimes" was seriously prejudicial. Again, we do not agree. In view of Cepeda's claim that he was the innocent recipient of contraband and that he thought that the contents of the parcels were merely personal effects that he had left in Colombia during his prior visit, the evidence was properly admitted as bearing on Cepeda's intent and knowledge. Furthermore, any objection that might have been made was waived by reason of Cepeda's failure to timely challenge the testimony on the specific grounds he now urges. See Scott v. Oliver, 552 F.2d 20, 21 (1st Cir. 1977); United States v. Guest, 514 F.2d 777, 779 (1st Cir. 1975).
 
 
 31
 Cepeda's next claim of error concerns a line of questioning that occurred during his cross-examination and the Government's rebuttal case, by which the prosecutor sought to rebut Cepeda's denial that he had made admissions upon his arrest. One of the admissions he denied on his direct examination was that he had told the arresting agents that he committed the crime because he owed back taxes to the Commonwealth. When asked about his tax filings on cross-examination, Cepeda testified that he had, in fact, filed returns and had paid back taxes. The Government then called to the stand an employee of the Tax Bureau who testified that, after a computer check, the Bureau found that Cepeda had not filed returns from 1972-1975. A "negative certification" was issued on the basis of this search, and admitted into evidence. Cepeda's counsel objected to this evidence, in part on the ground that no notice had been given with respect to the evidence and because it was hearsay since no cross-examination of the contributors to the computerized information, on which the certification was based, could be undertaken. The evidence was nonetheless admitted, and, when Cepeda attempted to call to the stand his brother to introduce documents showing that taxes had been paid, the trial judge precluded the testimony on the ground that the defendant's brother had been sitting in the courtroom throughout the proceedings. The Government, however, agreed to admit the checks and receipts showing the payment of taxes without the necessity of the witness's testimony.
 
 
 32
 We think that the trial judge did not abuse his discretion in permitting the Government to present its rebuttal evidence (despite the fact that such evidence tended to focus on rather extraneous matters) in view of the fact that when Cepeda took the stand in his own defense, he flatly denied making any admissions. The purpose of introducing the evidence was not merely to affect the defendant's credibility, but rather to resuscitate the Government's evidence that Cepeda had admitted the crime and his motive in committing it. We therefore agree that the trial judge could properly find the evidence admissible under Fed.R.Evid. 403.
 
 
 33
 However, with respect to the form of the evidence, interesting questions are raised. Any use of computerized data presents some obstacles to effective cross-examination, even if otherwise admissible, because of the difficulty of knowing the precise methods employed in programming the computer as well as the inability to determine the effectiveness of the persons responsible for feeding data into the computer. Thus, as the court noted in United States v. Dioguardi, 428 F.2d 1033, 1038 (2d Cir.), cert. denied, 400 U.S. 825, 91 S.Ct. 50, 27 L.Ed.2d 54 (1970), the Government is well-advised that notice of an intention to use computer data should be given well in advance if it is admissible and to be used at trial. No notice was given in the case at bar. As in the Dioguardi case, however, the computer program used to determine tax filings was uncomplicated, and any prejudice that may have resulted from the admission into evidence of a certificate based on computer data solely by reason of lack of notice was minimal.
 
 
 34
 The question remains, however, whether the negative certification was properly admitted. Appellant claims that the use of the certification based in turn on a computerized public record constitutes "indirect hearsay", and should have been excluded. Although we note that two recent cases decided by the Second Circuit held that public reports and computer data compilations, otherwise admissible in evidence as a business record or public record, were precluded from use against an accused under Fed.R.Evid. 803(8)(B) and (C), see United States v. Ruffin, 575 F.2d 346, (2d Cir. Feb. 27, 1978) (computer printout-business record inadmissible); United States v. Oates, 560 F.2d 45 (2d Cir. 1977), the limitations of Rule 803(8)(B) and (C) pertaining to the inadmissibility of public records as against a criminal defendant are not included in Rule 803(10) ("Absence of public record or entry"), which permits a "negative certification" to be offered into evidence, and does not by its terms limit the use of such evidence in criminal proceedings. The evidence was therefore admissible under Rule 803(10). We also agree that no error was committed in excluding the testimony of Cepeda's brother. Because the Government stipulated to admit into evidence the checks and receipts, the testimony would have been merely cumulative.
 
 
 35
 Cepeda's final claim is that there was insufficient evidence to prove that he "knowingly" possessed the marijuana. The claim is utterly without merit.
 
 
 36
 We find no ground for reversal in either case before us, and we AFFIRM the judgments of conviction as to both appellants.
 
 
 
 *
 Of the Second Circuit, sitting by designation
 
 
 [1]
 Appellant Cortes also came through Customs on that day. Nothing was found in his luggage