**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rose Florence CERVANTES, Manuel**
**Cervantes-Avalos,**
**Defendants-Appellants.**

**Nos. 78–1351, 78–1352, 78–1353**
**and 78–1354.**

United States Court of Appeals,
Tenth Circuit.

Argued May 17, 1979.

Decided Oct. 19, 1979.

Certiorari Denied Jan. 7, 1980.
See 100 S.Ct. 684.

---

William C. Danks, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Daniel J. Sears, Federal Public Defender, Denver, Colo., for Rose Florence Cervantes, defendant-appellant.

T. Kenneth Loughlin, Denver, Colo., Attorney for Manuel Cervantes-Avalos, defendant-appellant.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

Manuel Cervantes-Avalos and his wife, Rose Florence Cervantes, were jointly indicted, tried and convicted of knowingly making and using four counterfeit immigration documents (Immigration Form I-210), in violation of 18 U.S.C. § 1001. In the same count of the indictment Manuel and Rose were also charged with aiding and abetting in violation of 18 U.S.C. § 2. Both defendants have appealed, and on appeal each is represented by separate counsel, Manuel by appointed counsel, and Rose by the public defender. Finding no reversible error as to either defendant, we affirm.

A government undercover agent testified that he purchased four spurious immigration documents from the defendants for a total purchase price of $295. The agent had posed as an illegal alien who needed the immigration forms in order to avoid detection. Although Rose elected not to testify, it was her theory of the case that she was merely present when her husband, Manuel, sold the documents in question to the undercover agent, and that she did not participate in any manner in any of the several dealings.

Manuel testified in his own behalf and relied on the defense of entrapment. Specifically, Manuel testified that the documents in question had been prepared by a Mr. Diaz, whose whereabouts were unknown, and that Diaz had given him the

forms which he (Manuel) later sold to the undercover agent. Manuel strongly suggested that he had been "set up" by this Mr. Diaz, who was trying to break up his marriage to Rose.

In the trial court Manuel and Rose were represented by retained counsel, two attorneys from the same firm, who jointly represented both defendants. Prior to trial the Government attorney first raised the question as to whether there was any possible conflict between Rose and Manuel which would preclude such joint representation. Defense counsel assured the trial court that there was no such conflict. However, shortly before trial, counsel filed an untimely motion on behalf of Rose, seeking first to compel the Government to live up to its alleged agreement to allow Rose to plead guilty to a misdemeanor, or, in the event that such request was not granted, to sever Rose's trial from that of Manuel's. The basis for the severance request was the allegedly antagonistic defenses of Manuel and Rose. The trial court denied this motion, and the propriety of this ruling is probably the principal matter raised on appeal.

■ The trial court found that although there may have been some discussion between defense counsel and the prosecuting attorney regarding a possible plea of guilty by Rose to a misdemeanor charge, nevertheless no plea bargaining agreement was ever entered into by the parties. This finding certainly cannot be disturbed by us on appeal. The only matter to support the contention that there was an agreement is the bald statement by defense counsel in the trial court. Such was disputed by the prosecuting attorney, who, as indicated, conceded there was some preliminary discussion of a plea bargain, but added that no understanding was ever reached. The present case is far different from *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In *Santobello* there *was* an agreement; the defendant had in fact pled guilty to a lesser-included offense; and thereafter the prosecution reneged on its promise. *Santobello* is of no aid to Rose Cervantes.

■ Counsel alternatively asked, if it be found that there was no plea bargain agreement, that Rose's trial be severed from Manuel's trial. The trial court denied this request, and under the circumstances we find no error in this ruling. This case is not governed by *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In the instant case the undercover agent did testify about a conversation which he had with Manuel in which the latter implicated his wife Rose. However, the statements attributed to Manuel were not part of any post-crime confession, but were utterances made by Manuel during the very commission of the crime for which he was later indicted. Additionally, these statements made by Manuel involving his wife were made in the latter's presence under circumstances which indicated at least tacit acquiescence on her part. We fail to perceive any evidence which was adduced at the joint trial which could not have been properly introduced in evidence if Rose had been tried alone.

■ Counsel further argues that a severance should have been granted because Rose and Manuel had inconsistent and antagonistic defenses. Prior to trial, counsel did not in any manner demonstrate how the defenses of Rose and Manuel were somehow mutually self-destructing. Furthermore, the trial itself did not show any such antagonistic defenses on the part of Rose and Manuel. As indicated, Rose's defense was that she was merely present when Manuel sold the counterfeit documents to the undercover agent, and that she did not participate in the sale. Manuel's defense was that though he sold the counterfeit documents, he was somehow entrapped into the sale by the undercover agent, and that he had been "set up" by a jealous suitor of his wife. In sum, the granting of a severance is a matter resting within the sound discretion of the trial court, and under the circumstances of the present case, we find no abuse of that discretion. *United States v. Beathune*, 527 F.2d 696 (10th Cir.), *cert. denied*, 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821 (1975).

We do not believe that *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) has direct bearing on the present controversy. In *Holloway* appointed counsel for three co-defendants advised the court that because of possible inconsistent defenses separate counsel for each defendant should be appointed. The trial court denied the motion. In the instant case there never was any request to the trial court that Rose and Manuel should each have her or his own counsel. Rather, Manuel and Rose retained counsel of their own choosing. And the colloquy between defense counsel and his client when Rose decided not to take the witness stand indicated that even during the course of the trial itself Rose was entirely satisfied with her legal representation.

■ Rose also contends that the evidence against her is insufficient to support her conviction. She claims she was a mere bystander and not a participant. We disagree. Rose was present at each of the sales of the four counterfeit documents. On one occasion, when the undercover agent, after purchasing the first counterfeit document, returned to order some additional forms for other members of his family, Rose placed a fake phone call (dialed only a five-digit number) and then told the informant that the additional forms would be ready the following day. Also, when arrested, some marked bills which the agent had given Manuel in his initial purchase of the fake document were found in Rose's purse. The record discloses that Rose was more than a bystander, and permits the inference that she was in fact a participant.

■ Both Rose and Manuel complain about the juror questionnaire. Subsection 11 of that questionnaire is designed to establish the race of the prospective juror. The list of possible races includes Indians, Orientals, Blacks, Whites and "others," with blanks in which to place a checkmark. Complaint is made that there was no category of "Spanish-American" or "Chicano." Counsel's arguments are that because of this omission in the questionnaire they were thwarted in the effort to determine whether Spanish-Americans were systematically excluded from jury service. This argument is to us a bit tenuous. Counsel had the opportunity to inspect all jury records, which they apparently did not do. The jury selection plan for the District of Colorado has heretofore been approved by us in *United States v. Test,* 550 F.2d 577 (10th Cir. 1976).

The other matters raised by the defendants on appeal have been considered, but are without merit and do not warrant discussion.

Judgments affirmed.