**UNITED STATES of America**

v.

**Christos POTAMITIS, Eddie Argitakos, Demetrious Papadakis, a/k/a "Jimmy Pappas," Nicholas Gregory, a/k/a "Nick," a/k/a "Nick the Greek," and Steve Argitakos, Defendants.**

**No. S 83 Cr. 68.**

United States District Court,
S.D. New York.

June 7, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for United States of America; Ira H. Block, Michael Norton, New York City, of counsel.

Arnold D. Roseman, New York City, for defendant Christos Potamitis.

Joel Winograd, New York City, for defendant Eddie Argitakos.

Martin Schmukler, New York City, for defendant Demetrious Papadakis.

Michael Washor, New York City, for defendant Steve Argitakos.

OPINION

EDWARD WEINFELD, District Judge.

The defendant, Steve Argitakos ("Argitakos"), together with four codefendants, including his son Eddie, is charged in count 1 of an indictment with conspiracy in the theft of money, food stamps and other property in excess of $11,000,000 from the Sentry Armored Courier Corporation ("Sentry"), Bronx, New York. Argitakos also is charged in count 5 with being an accessory after the fact in violation of 18 U.S.C., section 3, with respect to various substantive offenses committed by his codefendants, all of which stem from the Sentry theft.

The government contends that evidence exists that early in January 1983 Argitakos delivered a padlocked blue footlocker to a friend, Steve Panagopolous, at East Greenbush, near Albany, New York, requesting Panagopolous to hold the footlocker until Argitakos returned in several weeks from a trip to Montreal, on which he was then enroute. Soon after the footlocker was left with Panagopolous, he read in the public press about the arrest of Eddie Argitakos in connection with the Sentry robbery. Panagopolous knew that Eddie was the son of Argitakos. He became concerned about his possible involvement in the Sentry affair by reason of his possession of the footlocker, the contents of which he was unaware. He consulted an attorney, who, with Panagopolous' consent, delivered it to the Federal Bureau of Investigation ("FBI"). Upon an affidavit by an FBI agent, a search warrant was issued and when the warrant was executed the locker was found to contain approximately $392,000 in United States currency. The government asserts that at trial it will prove that the $392,000 consists in part of a portion of $1,500,000 in currency belonging to a patron of Sentry which was stored on its premises the night of the theft.

There are three motions before the Court. Argitakos moves (1) for a separate trial pursuant to Fed.R.Crim.P. 14, and (2) to suppress the footlocker and its contents. The government moves pursuant to the

Speedy Trial Act, 18 U.S.C., sections 3161(h)(3) and (8), for a finding by this Court excluding time from the operation of the Act based upon the absence and unavailability of Panagopolous, an essential witness. We consider each motion separately.

## A. MOTION FOR A SEPARATE TRIAL

Argitakos does not raise any issue regarding the propriety of joinder under Rule 8(b). His motion is based solely upon Rule 14, which provides:

> If it appears that a defendant or the Government is prejudiced by a joinder ... of defendants ... for trial together, the court may ... grant a severance of defendants or provide whatever other relief justice requires.

■ A defendant seeking a Rule 14 severance bears a "heavy burden" of showing that he will suffer "substantial prejudice" from a joint trial.[1] Substantial prejudice does not mean merely a better chance of acquittal.[2] The prejudice must be of such a degree that the defendant's rights cannot be "adequately protected by appropriate admonitory instructions to the jury,"[3] and such that, without a severance, he would "not receive a fair trial."[4] Absent such a showing the defendant's request for a separate trial must give way to the public interest in avoiding unnecessary duplicative efforts, trial time and expense.[5]

■ The defendant advances several contentions as to how a joint trial will prejudice him. First, he stresses that the proof against his codefendants is stronger than the evidence against him and that he is alleged to have played a lesser, peripheral role in the criminal scheme. But the law is clear that simply because the evidence against codefendants is stronger or that one defendant's role in the crime is lesser than that of others is not sufficient reason to grant a severance.[6] A statement made by our Court of Appeals in *United States v. Aloi* is apropos:

> Quite naturally in any multi-defendant trial there will be differences in degree of guilt and possibly degree of notoriety of the defendants. There may be some likelihood that proof admitted as to one or more defendants will be harmful to the others. However, this possibility does not necessarily justify individual trials.[7]

The defendant also contends that he will be unduly prejudiced by being jointly tried with his son, both because of the "spillover" effect of the evidence against his son, and because he will be deterred from testifying on his own behalf lest his testimony incriminate his son. As to the first claim, joint trials of close relatives have been upheld.[8] The Court is of the view that a properly instructed jury will be able to segregate the evidence as to father and son and render a

1. *United States v. Carson,* 702 F.2d 351 at 366 (2d Cir.1983). *See also United States v. Carpentier,* 689 F.2d 21, 27 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983); *United States v. Werner,* 620 F.2d 922, 928 (2d Cir.1980); *United States v. Ochs,* 595 F.2d 1247, 1260 (2d Cir.), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979).

2. *See United States v. Carson,* 702 F.2d 351 at 366 (2d Cir.1983); *United States v. Sotomayor,* 592 F.2d 1219, 1228 (2d Cir.), *cert. denied sub nom. Crespo v. United States,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979); *United States v. Stirling,* 571 F.2d 708, 733 (2d Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978).

3. *United States v. Corallo,* 284 F.Supp. 240, 244–45 (S.D.N.Y.1968).

4. *United States v. Herrera,* 584 F.2d 1137, 1143 (2d Cir.1978).

5. *See United States v. Crisona,* 271 F.Supp. 150, 154 (S.D.N.Y.1967), *aff'd,* 416 F.2d 107 (2d Cir.1969), *cert. denied,* 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970).

6. *See United States v. Carson,* 702 F.2d 351 at 367 (2d Cir.1983); *United States v. Aloi,* 511 F.2d 585, 598 (2d Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975); *United States v. Borelli,* 435 F.2d 500, 502–03 (2d Cir.1970), *cert. denied,* 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971).

7. *United States v. Aloi,* 511 F.2d 585, 598 (2d Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975).

8. *See United States v. Cervantes,* 609 F.2d 974 (10th Cir.), *cert. denied,* 444 U.S. 1023, 100 S.Ct. 684, 62 L.Ed.2d 656 (1979) (husband and wife); *United States v. Stevison,* 471 F.2d 143 (7th Cir.), *cert. denied,* 411 U.S. 950, 93 S.Ct.

fair and impartial verdict as to each. As to the second claim, which was advanced for the first time at oral argument by defendant's counsel without any indication of the nature of the testimony, the law is clear that:

> [It is] axiomatic that 'the mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another [are] insufficient grounds to require separate trials. To obtain a severance on the ground of conflicting defenses, '[a]t the very least, it must be demonstrated that a conflict is so prejudicial that differences are irreconcilable, and that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' " [9]

The defendant has clearly not met this standard. He has merely raised the possibility of a conflict without any explanation of how his anticipated defense will be logically inconsistent with whatever defense is to be offered by the son.

▮▮▮ The ultimate question on a motion for severance is:

> [W]hether, under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.[10]

The charges against Steve Argitakos are straightforward and essentially based upon his leaving the footlocker with Panagopolous; indeed, the entire case against all five defendants is relatively simple and concise. The Court has no doubt that a properly instructed jury will be able to compartmentalize the evidence against each defendant and render a fair verdict as to each. Since considerations of judicial economy strongly favor a joint trial here, and substantial prejudice has not been shown, the motion for severance is denied.

## B. MOTION TO SUPPRESS THE FOOT-LOCKER AND ITS CONTENTS

The defendant claims his Fourth Amendment right was violated when Panagopolous, through his attorney, delivered the footlocker to the authorities, who searched it under the authority of the search warrant. The government argues preliminarily that the defendant lacks standing to suppress the evidence of the footlocker or its contents because he has not alleged any facts giving rise to a legitimate expectation of privacy in these items, and that his reliance on the now defunct doctrine of "automatic standing" enunciated in *Jones v. United States*[11] is clearly misplaced. Even assuming arguendo, however, that the defendant has standing, it is clear that the Fourth Amendment was not violated here.

▮▮▮ First, the delivery of the footlocker to the FBI by the attorney is not a constitutional violation because the Fourth Amendment limits only the government, not private citizens.[12] It is well established

---

1933, 36 L.Ed.2d 411 (1972) (mother and daughter). *See also United States v. Carson*, 702 F.2d 351 at 366 n. 22 (2d Cir.1983) (numerous defendants were related and evidence showed heroin conspiracy was a "family business").

**9.** *United States v. Ehrlichman*, 546 F.2d 910, 929 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 570 (1977). *See also United States v. Carpentier*, 689 F.2d 21, 27 (2d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983); *United States v. Davis*, 623 F.2d 188, 194 (1st Cir.1980); *United States v. Sciandra*, 529 F.Supp. 320, 323 (S.D. N.Y.1982).

**10.** *United States v. Kahaner*, 203 F.Supp. 78, 81–82 (S.D.N.Y.1962).

**11.** 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). *See United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (overruling *Jones v. United States*).

**12.** *See Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 487–90, 91 S.Ct. 2022, 2048–50, 29 L.Ed.2d 564 (1971).

that a person who has been duped into holding stolen property has the right promptly to establish his innocent role in the transaction and to exculpate himself by voluntarily delivering the contraband to the authorities.[13]

■ Next, since the search of the footlocker was conducted pursuant to warrant, the search is valid unless the affidavit in its support did not establish probable cause to believe a crime had been committed of which the fruits could be found in the footlocker.[14] As the Supreme Court has recently reiterated:

> [P]robable cause is a flexible, common-sense standard.... A 'practical, non-technical' probability that incriminating evidence is involved is all that is required .... 'The process does not deal with hard certainties, but with probabilities.... [T]he evidence must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " [15]

With these considerations in mind, we turn to the affidavit submitted to the Magistrate who issued the search warrant. The information set forth therein is as follows: (1) that the FBI knew that a robbery had occurred at the Sentry premises on December 13, 1982, and that four men, including Eddie Argitakos, had been arrested in connection with the robbery; (2) that on February 7, 1983, the FBI had seized a garbage bag filled with money apparently taken in the Sentry robbery from the Westport, Connecticut home of the in-laws· of one of the arrested men; (3) that a report of this seizure was carried in the *Albany Times-Union* and *The New York Times;* (4) that, as recounted to the FBI by an attorney representing an unidentified client, this client had read the above newspaper

accounts and become concerned that the padlocked footlocker left with him by the father of one of the arrested men about two to three weeks previously might also contain money from the robbery because it was unusual for the father to ask the client to hold anything like the footlocker; (5) that on February 9, the attorney had delivered the footlocker to the FBI, and (6) that FBI agents had lifted the footlocker and determined that it weighed about 100 pounds.

The above facts fully established a basis for a reasonable person to believe that the footlocker probably contained money from the Sentry robbery. It was reasonable for the Magistrate to conclude that the reported circumstances of the trunk's delivery matched the pattern that had previously been employed for concealing the proceeds of the robbery: in the case of the Connecticut seizure, the defendants had hidden money in a close relative's home located a few hours' drive from New York City. Moreover, the time when the attorney delivered the footlocker to the FBI coincided with the time that this common pattern of secreting the money could reasonably have become known to the attorney's client through the newspaper reports of the earlier seizure. Add to this the fact that the delivery of the footlocker to the client occurred but a few weeks after the robbery at Sentry. Finally, the fact that it was highly unusual for the father to ask the client to hold anything such as the footlocker further warranted a belief that money from the robbery was contained in the footlocker.

In addition, the Magistrate was justified in concluding that the attorney and his client were reliable sources of information. Double hearsay may be used as the basis for a search warrant when each level of hearsay is reliable.[16] No reason has been advanced for questioning the reliability of the

---

**13.** *See United States v. Diggs,* 544 F.2d 116, 119–21 (3d Cir.1976); *United States v. Botsch,* 364 F.2d 542, 547–48 (2d Cir.1966), *cert. denied,* 386 U.S. 937, 87 S.Ct. 959, 17 L.Ed.2d 810 (1967); *cf. United States v. Cowan,* 37 F.R.D. 215, 216–17 (S.D.N.Y.1965), *aff'd,* 396 F.2d 83 (2d Cir.1968).

**14.** *See Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Brinegar v.*

*United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

**15.** *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations omitted).

**16.** *See United States v. Fiorella,* 468 F.2d 688, 691 (2d Cir.1972), *cert. denied,* 417 U.S. 917, 94 S.Ct. 2622, 41 L.Ed.2d 222 (1974).

attorney, and the statements by the client carried sufficient indicia of reliability because: (1) they were based on firsthand knowledge of his transactions with the father,[17] and (2) they were potentially against his penal interest [18] because if he had been a deliberate rather than an unwitting accomplice, his statements would surely have focused suspicion upon him.

The motion to suppress the footlocker and its contents is denied.

## C. SPEEDY TRIAL ACT APPLICATION

■ The government has recently learned that Steve Panagopolous, the individual who received the footlocker from Steve Argitakos and later directed his attorney to turn the footlocker over to the FBI, left his home in the Albany area on or about May 4, 1983 on a previously unscheduled trip to Greece. According to statements made by Panagopolous' counsel and an affidavit executed by his wife, Panagopolous went to Greece, leaving behind his wife and eight year old son; this trip is his first visit to Greece in the past fourteen years; his whereabouts in Greece are unknown to his wife, as is the date he intends to return to this country; and he told his wife during a recent telephone conversation that he is receiving treatment from a doctor in Greece. Panagopolous did not inform the government before leaving the country that he was going to Greece. There is evidence that Panagopolous is apprehensive about testifying at the upcoming trial concerning the delivery of the footlocker to him.

The government is attempting to locate Panagopolous in order to compel his appearance as a witness at trial pursuant to 28 U.S.C., section 1783 [19]. It moves for an order pursuant to 18 U.S.C., sections 3161(h)(3) [20] and (8) [21] finding the period from May 4, 1983 (the date of Panagopolous' departure to Greece) through the estimated date of his return to this country, whether voluntarily or under compulsion of law, to be excludable time for purposes of the Speedy Trial Act. The Court has read Panagopolous' testimony before the grand jury. There can be no doubt that Panagopolous is both an "essential" and "unavailable" witness within the meaning of the statute as interpreted recently by our Court of Appeals in *United States v. Marrero.*[22]

**17.** *See United States v. Burke,* 517 F.2d 377, 380–81 (2d Cir.1975).

**18.** *See United States v. Harris,* 403 U.S. 573, 575, 91 S.Ct. 2075, 2078, 29 L.Ed.2d 723 (1971).

**19.** 28 U.S.C. § 1783(a) provides:
A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it ... of a national or resident of the United States who is in a foreign country ... if the court finds that particular testimony ... is necessary in the interest of justice ....

**20.** That section provides in pertinent part:
The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
. . . .
Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.
... [A] defendant or an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be deter-

mined by due diligence. For purposes of such subparagraph, a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

**21.** That section provides for the exclusion of:
Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

**22.** 705 F.2d 652 (2d Cir.1983).

**1490**

His testimony is essential to establish a prima facie case against Steve *Argitakos* and is of significant importance in the conspiracy and other charges against the other defendants. Proof of the delivery by the father of Eddie Argitakos of a footlocker containing proceeds from the robbery, coupled with evidence regarding the discovery of the garbage bag containing money from the robbery at the Connecticut home of the inlaws of defendant Demetrious Papadakis, would serve to support the government's other evidence linking these defendants as well as Christos Potamitis, the lone guard on duty at Sentry the night of the robbery, to the crime. If Panagopolous is not available to testify, thereby providing a foundation for the admission of the footlocker and its contents into evidence at trial, the government will be deprived of important evidence that may not otherwise be attainable and without which a miscarriage of justice would likely result.[23] Nor can there be any doubt that Panagopolous is "unavailable" since his "whereabouts are unknown."[24] Thus, the Court finds that the ends of justice served by the granting of a continuance due to the absence of an essential witness outweigh the best interest of the public and the defendant in a speedy trial.

The Court finds that a reasonable period to permit the government to undertake proceedings for the return of Panagopolous to secure his testimony is from May 4, 1983, up to September 30, 1983, which shall be excluded for the purposes of the Speedy Trial Act.

So ordered.

**23.** *See id.,* at 656.

**24.** 18 U.S.C. § 3161(h)(3)(B).