UNITED STATES of America

v.

**Nicholas GREGORY, a/k/a "Nick," a/k/a "Nick the Greek," Gerassimos Vinieris, a/k/a "Mike Vinieris," a/k/a "Captain Mike," Howard Marshall, and Richard DiBella, Defendants.**

No. SSS 83 Cr. 68 (EW).

United States District Court,
S.D. New York.

Jan. 29, 1985.

---

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for United States; Robert Garcia, Asst. U.S. Atty., of counsel.

Schulman & Laifer, Brooklyn, New York, for defendant Gerassimos Vinieris; Barry E. Schulman, of counsel.

James L. Berenthal, New York City, for defendant Howard Marshall.

Irving P. Seidman, New York City, for defendant Richard DiBella.

EDWARD WEINFELD, District Judge.

The instant indictment, the subject of a series of motions considered hereafter, is the second stemming from the theft of $11 million in cash, food stamps, and other property during a staged holdup of the Sentry Armored Courier Corporation, Bronx, New York ("Sentry"). Under the prior indictment, five defendants, Christos Potamitis, Eddie Argitakos, Steve Argitakos, Demetrious Papadakis, and Nicholas Gregory, were charged with various offenses based upon the theft, including con-

spiracy; in addition, the indictment charged that other persons known and unknown to the Grand Jury were participants in the conspiracy.

A trial under the prior indictment, which commenced on October 24, 1983 and was concluded on December 7, 1983, resulted in the conviction of Eddie Argitakos, Christos Potamitis, and Steve Argitakos on one or more counts; Demetrious Papadakis was acquitted. Nicholas Gregory was a fugitive at the time of the trial. The judgments of conviction were affirmed upon appeal.[1] Familiarity is assumed with the Court of Appeals' opinion and this Court's pretrial rulings with respect to motions made by defendants in the prior indictment, which were also affirmed upon appeal.[2]

Nicholas Gregory was apprehended on September 4, 1984, following which the Grand Jury returned an indictment charging him, Gerassimos Vinieris, Howard Marshall, and Richard DiBella with conspiracy and various substantive crimes arising out of the December 12, 1982 Sentry theft. These defendants, except for Gregory, now make various motions with respect to the latter indictment.

### MOTIONS BY MARSHALL AND DiBELLA

Marshall attacks the indictment on various grounds. The charges against him in the various counts in which he is named center essentially about a claim that, with respect to $20,000 in currency found during a search under warrant of a jewelry premises owned by him, he gave false information when he appeared before a Grand Jury and again upon the trial of Eddie Argitakos, Christos Potamitis, and two others. Thus, Counts Seven and Eight charge that he gave false material testimony when he appeared before a Grand Jury on April 8,

1983 and when he testified at the trial on November 9, 1983. In these instances he is charged with violations of 18 U.S.C. § 1623, which makes it a crime knowingly to make a false material declaration under oath in any proceeding before a Court or Grand Jury.

In addition, he is also charged, based upon the very same alleged false testimony before the Grand Jury and the Trial Court, in two separate Counts, Nine and Ten, with violations of Section 1503 of Title 18, the obstruction of justice statute. This section provides in pertinent part that one who

corruptly ... endeavors to influence ... or impede any grand or petit juror, or officer in or of any court of the United States, ... in the discharge of his duty, ... or corruptly ... impedes, or endeavors to influence, obstruct, or impede, the due administration of justice [commits a crime].

The thrust of the statute extends to investigative activities by authorized agencies, such as the Federal Bureau of Investigation, to a Grand Jury proceeding, or to a trial following indictment. The law is designed to prevent a miscarriage of justice by corrupt methods.[3] It is aimed at the widest variety of means and conduct that impede the functioning of the judicial process, whether it be an investigation, a Grand Jury inquiry, or a trial proper.[4]

Here the Government contends that Marshall, by his alleged willful and knowing false testimony with respect to the $20,000 in currency found on his premises, corruptly endeavored to influence, obstruct, or impede the due administration of justice in one instance before the Grand Jury and in another upon the trial proper. It is also alleged that by giving false testimony Marshall committed overt acts in furtherance

---

1. *United States v. Potamitis,* 739 F.2d 784 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 297, 83 L.Ed.2d 232 (U.S.1984).

2. *United States v. Potamitis,* 564 F.Supp. 1484 (S.D.N.Y.1983); *see also United States v. Papadakis,* 572 F.Supp. 1518 (S.D.N.Y.1983).

3. *United States v. Walasek,* 527 F.2d 676, 680 (3d Cir.1975); *Catrino v. United States,* 176 F.2d 884, 887 (9th Cir.1949).

4. *United States v. Rosner,* 352 F.Supp. 915, 919 (S.D.N.Y.1972), *mod. on other grounds,* 485 F.2d 1213 (2d Cir.1973), *cert. denied,* 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *United States v. Solow,* 138 F.Supp. 812, 814 (S.D.N.Y.1956).

of the conspiracy charged in Count One. That count charges a conspiracy to commit various crimes related to the Sentry theft, including obstruction of justice and false swearing.

Marshall first moves to dismiss the conspiracy count upon the grounds that his indictment thereunder was obtained through the use of his immunized testimony and that such testimony will be used against him at trial. He testified before the Grand Jury and upon the trial under a grant of immunity as authorized under 18 U.S.C. § 6002. This section provides that such compelled testimony "or any information directly or indirectly derived from such testimony ... may [not] be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

■ Marshall argues that the foregoing exception permitting the Government to use an immunized witness's testimony against him is limited to the crimes specified therein, that is, perjury or giving a false statement, and does not extend to the crime of conspiracy.[5] However, the exception also extends to the immunized person "otherwise failing to comply with the order [of immunity]." This undefined clause is comprehensive enough to include a conspiracy to violate the false swearing and obstruction of justice statutes, which violations the instant indictment alleges were among the various objectives of the conspiracy. The sweep of the exception against the use of immunized testimony, under the clause "otherwise failing to comply with the order [of immunity]," extends

to any conduct aimed at frustrating the purpose of the grant of immunity.[6] A conspiracy allegedly participated in by the immunized defendant by giving false testimony to impede an ongoing investigation, Grand Jury inquiry, or trial proper comes within the scope of the exception. The Government therefore may use Marshall's immunized testimony to prosecute him for participation in the conspiracy charged in Count One and need not establish at a hearing or otherwise that the prosecution is based upon evidence independent of such testimony. Accordingly, this branch of Marshall's motion is denied.

■ Next, Marshall, joined by DiBella, argues that the conspiracy ended in February 1983 with the arrest of Eddie Argitakos and Christos Potamitis, admittedly two principal conspirators, and that since the acts attributed to the movants occurred thereafter, and in the instance of DiBella even after the trial of Argitakos and Potamitis and the affirmance of their convictions, the conspiracy count must be dismissed. While it is true that usually a conspiracy terminates upon arrest of the participants and exposure of the conspiracy,[7] the existence, duration, and scope of a conspiracy and whether there is a "single" or "multiple" conspiracy present fact issues.[8] Here, despite the arrest and conviction of two of the prime conspirators, there was still unrecovered the not inconsiderable sum of $10 million in currency and food stamps and the continued efforts by the authorities to locate the loot and the persons having possession of it or involved in its concealment. In addition and of equal significance, Nicholas Gregory, who the Government alleges was the principal plan-

5. Marshall also asserts that the exception does not extend to obstruction of justice, 18 U.S.C. § 1503, as charged in Counts Nine and Ten. At least one Court has held otherwise. *United States v. Pisani,* 590 F.Supp. 1326, 1341–44 (S.D. N.Y.1984). In view of this Court's dismissal of Counts Nine and Ten, as discussed hereafter, the question is moot in the instant case.

6. *See United States v. Tramunti,* 500 F.2d 1334, 1345 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974); *Pisani,* 590 F.Supp. at 1342.

7. *See Krulewitch v. United States,* 336 U.S. 440, 442, 69 S.Ct. 716, 717, 93 L.Ed. 790 (1949); *Woodring v. United States,* 367 F.2d 968, 969 (10th Cir.1966).

8. *Potamitis,* 739 F.2d at 787; *United States v. Alessi,* 638 F.2d 466, 472 (2d Cir.1980); *United States v. McGrath,* 613 F.2d 361, 367 (2d Cir. 1979), *cert. denied,* 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980); *Woodring,* 367 F.2d at 969.

ner of and a participant in the staged hold-up and thereafter was in possession of the major portion of the unrecovered cash and food stamps, was at large and not apprehended until September 4, 1984, more than a year and a half after the arrests of Potamitis and Argitakos. During this period and until his arrest, the Government charges that Gregory was still engaged in various conspiratorial activities. Thus, the Government contends that there was in existence a continuing single, overall conspiracy to effect several of its objectives even after the robbery, to wit: the concealment of the unrecovered cash and food stamps; obstruction of the ongoing investigation by the FBI, the United States Attorney, and the Grand Jury; and hindering the apprehension of other participants in the Sentry affair.

 DiBella, it is charged, played a role in the conspiracy by supplying a rental car to Gregory to conceal his identity, to prevent his detection, and to impede the ongoing investigation to locate and recover the remaining $10 million in currency and food stamps. DiBella's contention that he is entitled to dismissal of the conspiracy charge against him because his acts occurred in August-September 1984, whereas the conspiracy commenced shortly prior to the staged holdup on December 12, 1982 and terminated no later than the arrest of Christos Potamitis and Eddie Argitakos in February 1983, is without substance. As already noted, it is charged that Gregory, a prime conspirator, was still engaged in committing acts in furtherance of various objectives of the conspiracy. It is horn-

book law that one may join a conspiracy at any point during its existence and be held accountable for all acts committed before as well as after his joinder to effectuate one or more of its objectives.[9] In this instance, one of the objectives, as the indictment charges, was to "conceal, hide and secret the money and property stolen ... from Sentry on December 12, 1982, in such a way as to attempt to prevent said money and property from being located and recovered by law enforcement officials investigating the theft, and from being traced to, and identified with, the perpetrators."[10] Equally, that a defendant played a minor role as compared to others[11] or that he did not know all the other conspirators[12] is of no significance under the law of conspiracy.

The foregoing also applies to Marshall. That Marshall's only alleged involvement in the conspiracy as charged is that he lied to the Grand Jury and the Trial Court about the source of the cash found in his jewelry store, some of which allegedly was traced to the Sentry theft, is no ground on which to dismiss the conspiracy count as to him. He allegedly committed acts that furthered an important objective of the conspiracy—the obstruction of investigative efforts to recover the money and other property stolen from the Sentry premises on December 12, 1982 and to identify other persons who may have been involved in one or more crimes related to the robbery—and may be charged as a participant therein. Accordingly, both his and DiBella's motions to

9. *United States v. Corbin,* 734 F.2d 643, 652 (11th Cir.1984); *United States v. Guillette,* 547 F.2d 743, 751 (2d Cir.1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977); *United States v. Bridgeman,* 523 F.2d 1099, 1107–08 (D.C.Cir.1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1744, 48 L.Ed.2d 206 (1976).

10. Indictment, "Means Used to Effect the Objects of the Conspiracy," at ¶ 8.

11. *United States v. Armedo-Sarmiento,* 545 F.2d 785, 794 (2d Cir.1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1331, 51 L.Ed.2d 595 (1977); *United*

States v. Kahaner, 317 F.2d 459, 468 n. 4 (2d Cir.), *cert. denied,* 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963); *United States v. Stromberg,* 268 F.2d 256, 264 (2d Cir.), *cert. denied,* 361 U.S. 863, 80 S.Ct. 124, 4 L.Ed.2d 102 (1959); *United States v. Shipp,* 578 F.Supp. 980, 995 (S.D.N.Y. 1984).

12. *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947); *United States v. Cunningham,* 723 F.2d 217, 229 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984); *Alessi,* 638 F.2d at 473.

dismiss the conspiracy count upon this ground are denied.[13]

■ Marshall also attacks the substantive counts against him as multiplicious. During argument, this Court observed that under appropriate factual circumstances false swearing and obstruction of justice charges are not necessarily multiplicious, but the Court raised the question whether in this instance, where the very same alleged false testimony is relied upon to sustain the Government's proof of the separate charges of false swearing and obstruction of justice, they are multiplicious, particularly since intent is an essential element of each offense. Perjured testimony, no less than conduct directed against a grand or petit juror or other officer such as tampering by corruption, threats of harm, or injury or attempts otherwise to influence his action,[14] "is an obvious and flagrant affront to the basic concepts of judicial proceedings."[15] In this sense, perjured testimony *is* an obstruction of justice; to charge it here is to charge obstruction of justice. Additionally, in light of the various other charges against this and the other defendants, totalling twelve counts, to try Marshall for false swearing as well as obstruction of justice would complicate and add to matters to be considered by the jury under the various counts.

The prosecution presses that it is entitled to have both types of the alleged crimes passed upon by the jury. The Court is not persuaded since here the Government relies upon the identical alleged false testimony to sustain the false swearing and obstruction of justice charges. It would be a different matter if the obstruction charges had as their factual basis some conduct such as an attempt to influence a juror outside the courtroom or to threaten him with injury or otherwise by direct action or conduct to divert him from his duty as a juror. No public purpose would be served by unduly burdening the jury with unnecessary issues. It is beyond challenge that as to each instance of allegedly false testimony the Government either succeeds or fails with respect to both charges upon the same evidence. If its proof sustains one charge, the public interest is vindicated. The Government, in response to the Court's inquiry, has indicated a preference that the perjury charge be tried and, accordingly, the obstruction of justice count will not be submitted for jury determination.

■ Marshall attacks the remaining perjury counts upon the grounds that each fails to state the truth he allegedly withheld and each involves several assertions without specifying which ones are false or without charging separate offenses as to each. Each perjury count, however, specifically identifies the portions of the testimony claimed to be false, and it is clear from a reading of these portions that each perjury count charges but a single offense, namely, false testimony about the origin of the $20,000 cash found during a search of Marshall's jewelry store, and therefore makes plain the nature of the claimed falsehood. A perjury charge is sufficient if it alleges the falsity of the defendant's oath without alleging what the truth was.[16] Therefore, the motion directed to the perjury charges is denied.

Marshall moves to suppress oral statements he made to law enforcement officials during their search of his jewelry store pursuant to a warrant on February 16, 1983. After a hearing before the Court, this motion was denied upon a finding that Marshall was not in custody or under re-

---

13. Nor, since the conspiracy count of the indictment is valid on its face, is there any reason to inquire into the Grand Jury proceedings concerning this count, as DiBella urges. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

14. *Cf. United States v. Cohn,* 452 F.2d 881, 883–84 (2d Cir.1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972) (18 U.S.C.

§ 1503 relates specifically to tampering with extrinsic sources of evidence but also embraces perjury).

15. *United States v. Mandujano,* 425 U.S. 564, 576, 96 S.Ct. 1768, 1776, 48 L.Ed.2d 212 (1976).

16. *United States v. Marchisio,* 344 F.2d 653, 662 (2d Cir.1965).

straint and that a reasonable person in his situation would have understood as much.

■ Marshall's further attack on the aforementioned search warrant is without merit. The warrant was issued by a Magistrate upon the basis of hearsay evidence, but this evidence was obtained by the FBI from a confidential informant who, during the prior eight months, allegedly had provided other information that served as the basis for seven search warrants, each of which led to the seizure of contraband and evidence and instrumentalities of crime. In the instant case, the informant told the FBI of a conversation, related to him by one of the parties thereto, whom he knew, in which one "Nick" claimed to be a participant in the Sentry robbery and disclosed the precise location and denominations of a large amount of currency allegedly stolen from Sentry. Moreover, the FBI had reason to believe, based on other reliable sources, that the disclosed location was the site of an illegal "fencing" business used to store the proceeds of criminal activity, and it had confirmed through surveillance work that there was a safe in the rear of the location, just as "Nick" allegedly had disclosed. The FBI also had reason to believe that one named "Nick" was involved in the Sentry affair. Conceding that reliable hearsay may be the basis of a search warrant, Marshall principally attacks the reliability of the unnamed party to the conversation with "Nick." However, the account of the conversation related by that person included significant details that were corroborated through independent sources. Under the totality of circumstances set forth in the FBI agent's affidavit supporting the search warrant, there was probable cause to search the location allegedly disclosed by "Nick" and the warrant was properly issued.[17]

■ Finally, that the officials who executed the warrant did not stop to compare the serial numbers of the $20,000 in currency they seized with those listed in the warrant until after they had left the premises, whereupon they identified several bills as having been stolen from Sentry, is of no consequence. Marshall's motions concerning the search of his jewelry store are denied.

## MOTIONS BY VINIERIS

Vinieris moves to dismiss the indictment upon the grounds that he was denied his statutory and constitutional rights to a speedy trial and because of prosecutorial vindictiveness and inconsistency. First, Vinieris essentially claims that the instant charges, which were filed on December 6, 1984, are related to charges filed against him on September 9, 1983 in a prosecution pending before Judge Kevin Duffy, and that the Government therefore unnecessarily delayed the filing and resolution of the instant charges in violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), the Sixth Amendment to the Constitution, and Rule 48(b), Fed.R.Crim.P.

■ As to the statutory requirement that trial commence within seventy days after an indictment is filed, 18 U.S.C. § 3161(c)(1), on which Vinieris relies, there is no claim that seventy days have elapsed from the date the instant indictment was filed; rather, the claim appears to be that the seventy day period began to run on September 9, 1983, the date the allegedly related charges before Judge Duffy were filed. The Court may assume, without deciding, that the instant charges and those before Judge Duffy are related (the Government disputes this) and that the statutory period as to the instant charges began to run when the indictment now before Judge Duffy was filed. However, if the seventy day period as calculated with respect to the earlier filed indictment is to apply here, then the excludable time as determined by Judge Duffy should also be taken into account here. Judge Duffy issued an order on November 14, 1984 ex-

---

**17.** *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Travisano,* 724 F.2d 341, 345–46 (2d Cir.1983).

cluding from the seventy day period all of the time prior thereto except for the first twenty days after the indictment was filed. The exclusion was due largely to Vinieris's own motion for a mental competency determination.[18] This determination was long delayed by Vinieris's subsequent motion to appoint a private psychiatrist, which was filed and granted in early April 1984, and by the fact that the report of this psychiatrist was not submitted until November 21, 1984. In addition, the Government asserts, and Vinieris does not deny, that prior to the issuance of the exclusion order Vinieris filed various other motions before Judge Duffy which are still pending and that no trial date has yet been set in that prosecution. Thus, even if the statutory period commenced upon the filing of the allegedly related charges on September 9, 1983, all but the first twenty days after that filing are excludable under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1), and the claim that Vinieris's statutory right to a speedy trial has been violated is without merit.

Similarly, Vinieris's own role in delaying trial on the first-filed charges and the absence of any substantial prejudice to his defense as a result of this delay (discussed hereafter) defeats his claim that his constitutional right to a speedy trial has been violated.[19] Nor do these circumstances in any way support Vinieris's claim that the indictment should be dismissed under Rule 48(b) for want of prosecution.

Vinieris also claims that, even if the instant charges are unrelated to those filed in September 1983, the Government's failure to file them earlier has prejudiced his defense in violation of the Fifth and Sixth Amendments. However, the only prejudice to his defense that he has alleged involves the disappearance of a prospective Govern-

ment witness and the assumption that the witness will not appear at trial.[20] Moreover, in the event the witness does not appear, any claimed prejudice can be eliminated upon a proper motion at trial, as discussed hereafter.

Vinieris further claims that the Government's decision to file the charges one day before Judge Duffy reduced bail as to the first-filed indictment constitutes prosecutorial vindictiveness and is also unconstitutional. However, there is no indication that the Government delayed filing the instant charges until December 6, 1984 for any reason but that Vinieris's alleged co-conspirators, named with him in the instant indictment, were not arrested until September 4 and November 28, 1984. Pre-indictment delay due to an ongoing criminal investigation conducted in good faith is no basis for dismissal of the indictment on constitutional grounds.[21] Nor, in order to rebut a charge of prosecutorial vindictiveness, was the Government required to delay filing the instant charges still further, beyond December 6, so that Vinieris, whom it considered likely to flee if released, could take advantage of the bail reduction.

Vinieris's final claim concerning the timing of the indictment, that the Government is estopped from charging him under the conspiracy count because it took a position at an earlier trial that he was not a participant, is without merit. There is no factual support for this claim; moreover, even were that the Government's original view, if upon further evaluation of available evidence the Government determined that Vinieris was now subject to prosecution, it was entitled to proceed accordingly.

Vinieris next moves to dismiss the indictment upon the ground that it and the evidence to be used against him at trial

---

18. *United States v. Vinieris,* No. 83 Crim. 566, Order (S.D.N.Y. Nov. 14, 1984).

19. *Cf. Barker v. Wingo,* 407 U.S. 514, 534–36, 92 S.Ct. 2182, 2194–95, 33 L.Ed.2d 101 (1972) (no constitutional violation where defendant did not want speedy trial and acquiesced in five year delay having a minimal prejudicial effect).

20. Since the completion of the opinion and immediately before it was filed, the Court was informed by the Government that this witness is now available and defendant's counsel may interview him in advance of trial if the witness consents.

21. *See United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

were obtained through the use of his immunized testimony before the Grand Jury. That Vinieris testified under a grant of immunity before he was indicted does not automatically compel dismissal of the indictment.[22] The Government is free to prosecute him but it has the affirmative duty to prove that the evidence it proposes to use against him upon the trial is derived from a legitimate source wholly independent of Vinieris's compelled testimony.[23] The Government asserts such is the case here. First, it alleges and it is not disputed that the indictment was returned by a different Grand Jury from the one before which Vinieris appeared and that heard his immunized testimony.[24] Next, it avers that the evidence it will offer against him upon the trial was derived from sources free from "taint"—that is, evidence from legitimate sources wholly independent of the immunized testimony. Whether or not this is so may require a hearing, or the trial itself may establish the Government's position and obviate the need for a hearing. Whether or not a hearing is required in the instant case, it would best be deferred until after the trial, as the Government requests, at which time a proper evaluation could be made as to whether in fact the evidence offered was obtained from wholly independent sources.[25] To conduct the hearing in advance of trial would require disclosure of the Government's proof, apart from that already made available to the defendants, which in the light of demonstrated experience in the first trial may impede the Government's prosecution. The risk of disappearance of witnesses in this case is not hypothetical. Upon the first trial two witnesses were unavailable because they had fled the jurisdiction under the influence of one of the trial defendants.[26] While no charge is made against Vinieris in this respect, the fact is that those witnesses were unavailable. The Government is entitled to protection against a repetition of the offense. Accordingly, Vinieris may renew his motion for a "taint" hearing after the trial, if necessary.

██ Vinieris further moves to suppress statements he made to law enforcement officials and other evidence they seized upon the grounds that such evidence was obtained in violation of his Fourth, Fifth, and Sixth Amendment rights. As to the Sixth Amendment, he makes two claims. First, he claims that statements he made to a Government informant on June 23, 1983 should be suppressed because they were elicited by the Government in the absence of defense counsel. This claim has no merit for Vinieris's Sixth Amendment right to counsel did not attach until adversarial proceedings commenced against him, " 'whether by way of a formal charge, preliminary hearing, indictment, information, or arraignment.' "[27] Vinieris was arrested and arraigned in August 1983 and indicted in September 1983, well after the statements in issue were made. Vinieris claims he was a "target of the investigation" when he made these statements, but that fact is not enough to trigger his Sixth Amendment right to counsel.[28]

██ Vinieris also claims that his right to counsel was violated when his former

---

**22.** *See Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972).

**23.** *Id.* at 461–62, 92 S.Ct. 1665–66, *United States v. Tantalo,* 680 F.2d 903, 908 (2d Cir.1982); *United States v. Kurzer,* 534 F.2d 511, 517 (2d Cir.1976).

**24.** *See United States v. Hinton,* 543 F.2d 1002, 1008–10 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976).

**25.** *See Tantalo,* 680 F.2d at 909; *United States v. Frumento,* 552 F.2d 534, 542 n. 14 (3d Cir.1977) (en banc).

**26.** *Potamitis,* 739 F.2d at 788–89.

**27.** *United States v. Vasquez,* 675 F.2d 16, 17 (2d Cir.1982) (per curiam) (quoting *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977)); *see Kirby v. Illinois,* 406 U.S. 682, 688–90, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion); *United States v. Mast,* 735 F.2d 745, 749 n. 4 (2d Cir.1984); *United States v. Jamil,* 546 F.Supp. 646, 651 (E.D.N.Y.1982), *rev'd on other grounds,* 707 F.2d 638 (2d Cir.1983).

**28.** *Mast,* 735 F.2d at 749 n. 4; *Vasquez,* 675 F.2d at 17; *Jamil,* 546 F.Supp. at 651.

attorney, Jack Cohen, appeared on August 19, 1983 before the same Grand Jury that later indicted Vinieris. Cohen allegedly failed to challenge the Grand Jury subpoena or to inform his client that he had been subpoenaed. While the relief Vinieris seeks is somewhat unclear, he appears to request that all statements made by Cohen to the Grand Jury as well as all statements made by Vinieris to law enforcement officials be suppressed. Although our Court of Appeals has expressed concern about the grave dangers posed when counsel appears before the same Grand Jury that indicted the defendant, it has upheld the Government's right to call an attorney before the Grand Jury and question him on unprivileged matters.[29] Thus, the Sixth Amendment does not protect Vinieris from Grand Jury inquiry into the work of his defense counsel absent a showing that counsel testified to privileged matters. That Cohen voluntarily testified to such matter would not necessarily defeat Vinieris's motion, as the Government suggests, for the decision to waive the attorney-client privilege and/or the work product rule rests with the client.[30] However, before he is entitled to a hearing on the issue, Vinieris must overcome the presumption that his former attorney adequately protected his interests before the Grand Jury.[31] Vinieris

has provided no evidence whatsoever that Cohen disclosed confidential matters to the Grand Jury. There is no affidavit by Cohen describing the nature of his testimony or any explanation for its absence. Nor, though the Government asserts it provided Vinieris with the transcript of Cohen's Grand Jury testimony, has Vinieris even cited any portions of that testimony that allegedly violated the attorney-client privilege or raised an issue under the work product doctrine. Absent any such indication that Cohen failed to protect Vinieris's interests before the Grand Jury, there is no basis on which to find that Cohen's testimony violated Vinieris's Sixth Amendment right to counsel.[32] Vinieris's further claim that his own statements to law enforcement officials should be suppressed upon the same grounds is therefore also without merit, even assuming that these statements, which he does not identify, were made after his right to counsel attached. Accordingly, these motions concerning Cohen's Grand Jury testimony are denied.[33]

 Vinieris also moves to suppress evidence seized from a "red-roped folder" pursuant to a search warrant issued on August 26, 1983. He claims that the folder, which contained his business records, was initially delivered to law enforcement officials by one Al Isaacs, who maintained

**29.** See United States v. Wolfson, 558 F.2d 59, 65 (2d Cir.1977); see also Matter of Doe, 551 F.2d 899, 902 (2d Cir.1977) (dismissing client's appeal from order directing his attorney to testify to Grand Jury because privilege was already asserted by attorney and found inapplicable); In re Grand Jury Investigation, 412 F.Supp. 943, 948 (E.D.Pa.1976) (if work product doctrine inapplicable, irrelevance and attorney-client privilege are only bases on which attorney may resist subpoena duces tecum issued by Grand Jury investigating his client). But cf. In re Terkeltoub, 256 F.Supp. 683 (S.D.N.Y.1966) (attorney not required to testify before Grand Jury investigating his client about conversation he had with third person on client's behalf even though conversation looked to commission of a crime).

**30.** See Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir.1967) (attorney-client privilege); United States v. Ternullo, 413 F.Supp. 801, 802–03 (S.D.N.Y.1976) (same); United States v. Mitchell, 372 F.Supp. 1239, 1245–46 (S.D.N.Y.1973) (work product rule).

**31.** See Wolfson, 558 F.2d at 66.

**32.** Cf. Smith v. Regan, 583 F.2d 72, 75–76 (2d Cir.1978) (joint representation does not infringe right to counsel absent specific instance of prejudice); United States v. McMann, 292 F.Supp. 191, 194–95 (S.D.N.Y.1968) (failure to allege facts showing specific prejudice at trial defeats claim that right to counsel was denied).

**33.** Vinieris appears also to claim that Cohen himself was the target of a criminal investigation conducted by the same Assistant United States Attorney prosecuting Vinieris. While such an investigation could create a conflict of interest on Cohen's part that might interfere with Vinieris's right to effective assistance of counsel, see Wolfson, 558 F.2d at 65; In re Grand Jury, 412 F.Supp. at 945–46, Vinieris offered no evidence that such an investigation existed or, if it did, that Cohen was aware of it. Without such evidence, the motion is denied without a hearing. See Wolfson, 558 F.2d at 65.

an office in the same suite as Vinieris but had no authority to turn over Vinieris's personal papers. It is well established that the Fourth Amendment limits only government, not private citizens,[34] and that law enforcement officials may lawfully inspect evidence voluntarily delivered to them by private citizens even if the delivery is made without the owner's consent.[35] Vinieris contends that Isaacs denied delivering the folder voluntarily and that he could only have been acting at their request and therefore must be viewed as a Government agent. However, Vinieris's claim is unsupported by an affidavit by Isaacs or anyone having personal knowledge of Isaacs's dealings with the law enforcement officials or the circumstances under which he delivered the red-roped folder to them. Without such support, Vinieris has failed to raise a factual issue concerning the validity of the seizure and is not entitled to a suppression hearing.[36] The movant having failed to meet his initial burden of making specific factual allegations of illegality, the motion to suppress the evidence seized pursuant to a search warrant from the red-roped folder is denied.[37]

In view of the affidavit submitted by Vinieris on personal knowledge and the absence of any such opposing affidavit submitted by the Government, a hearing was held on Vinieris's motion to suppress oral statements he made to law enforcement officials on June 10, 1983 and evidence they seized from his apartment with his written consent that same day. Upon the conclu-

sion of the hearing, the Court made the following disposition:

Based upon the totality of evidence and upon an appraisal of the demeanor and credibility of witnesses, the Court finds the evidence abundantly establishes at all times at issue that the defendant was not under restraint, under arrest, or in custody and was free to leave when he was questioned, and that he was fully aware of this—in sum, that all statements were made freely, voluntarily, and understandingly.

So, too, the Court finds that the defendant voluntarily, freely, and understandingly signed the consent to the search of his premises; that, in fact, he himself voluntarily delivered at his apartment many of the physical items sought to be suppressed.

Finally, the Court observes that the defendant's claim he did not understand English and what was said to him in English at the times in question is demonstrably false, as shown by his testimony covering 133 pages in English upon the trial of his action against the Byzantine Maritime Corporation.

The motions are denied in all respects.

Vinieris's motion to suppress evidence seized during a second search of his apartment in October 1983 is denied without a hearing. He contends that the second search was conducted upon the basis of illegally obtained evidence. As indicated by the Court's disposition set forth above, the evidence to which he refers—his state-

---

**34.** *United States v. Jacobsen,* 466 U.S. 109, ____, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Walter v. United States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980) (plurality opinion); *Potamitis,* 564 F.Supp. at 1487.

**35.** *Walter,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410; *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *United States v. McGuire,* 381 F.2d 306, 313 n. 5 (2d Cir.1967), *cert. denied,* 389 U.S. 1053, 88 S.Ct. 801, 19 L.Ed.2d 848 (1968). Under the rule in *Walter,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410, Isaacs's delivering the folder to the agents unopened would not have justified their inspection of its contents, but the agents did so pursuant to a search warrant.

**36.** *See United States v. Gillette,* 383 F.2d 843, 848 (2d Cir.1967); *United States v. Abrams,* 543 F.Supp. 1184, 1193 n. 11 (S.D.N.Y.1982); *United States v. Crisona,* 440 F.Supp. 24, 27 (S.D.N.Y. 1977).

**37.** *See United States v. Diezel,* 608 F.2d 204, 207 (5th Cir.1979); *see also United States v. Arboleda,* 633 F.2d 985, 989 (2d Cir.1980) (motion denied after a hearing), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981); *United States v. De La Fuente,* 548 F.2d 528, 533 (5th Cir.) (same), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977).

ments made and the items seized from his apartment on June 10, 1983—was not illegally obtained. His further claim that the agents who conducted the second search had already searched his apartment once and thus had no reason to believe the evidence they sought would be found there is of no consequence without an offer of proof. This conclusory allegation is not the "substantial preliminary showing" that must be made before a hearing is required to determine the validity of a search warrant.[38]

Finally, Vinieris's motion to preclude the Government's use at trial of the Grand Jury testimony by Michael Pavlatos, who was unavailable at the first trial because he had fled the jurisdiction and allegedly will still be unavailable for cross-examination at this trial, is denied at this time. This motion may be renewed at trial if and when the Government attempts to introduce such testimony.

## MOTIONS FOR SEVERANCE AND DISCOVERY

■ The motion by each of the three defendants to sever his trial from that of his co-defendants is denied. As to the claim that the evidence likely to be received at trial against his co-defendants will have a "prejudicial spillover" effect on his defense, a similar claim advanced by the alleged co-conspirators who were previously indicted and convicted was rejected by this Court and our Court of Appeals. The same considerations that justified a single trial then are relevant now.[39] As to Vinieris's further claim that he will suffer personal hardship by having to stand trial in two related prosecutions, before Judge Duffy

and in this Court, within a short period, no trial date has yet been set under the indictment before Judge Duffy and when the Government offered at oral argument to consolidate all charges in the trial to be conducted before this Court, counsel for Venieris declined the offer. This refusal renders this claim specious.

Marshall argues that severance of his trial is also necessary because the Government may offer inculpatory statements made to law enforcement officials by his co-defendants who may not take the stand, thereby denying him his Sixth Amendment right to be confronted with the witnesses against him. This situation may be addressed if and when it arises at trial. At present, Marshall has offered no evidence that the Government plans to offer any statements by his co-defendants against him, whether any such statements would inculpate him, or, if so, whether they would still be admissible against him as declarations of a co-conspirator made during the course of and in furtherance of the alleged conspiracy.[40]

Similarly, DiBella's further claim that severance of his trial is necessary so that he can present exculpatory testimony by his co-defendant, Nicholas Gregory, is denied. DiBella has submitted no affidavit by Gregory stating the latter's intention to take the stand at a separate trial on DiBella's behalf or setting forth the nature of Gregory's anticipated testimony. Without such a showing, there is no way to evaluate DiBella's claim that a severance would be justified.[41]

The various motions for a bill of particulars, some of which contain demands for information which clearly have no relation-

---

**38.** *See United States v. Figueroa,* 750 F.2d 232, 236–38 (2d Cir. Dec. 18, 1984); *Gillette,* 383 F.2d at 848; *United States v. Halsey,* 257 F.Supp. 1002, 1005 (S.D.N.Y.1966); *see generally United States v. Leon,* — U.S. ——, ——, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984) (in deciding whether probable cause was established, great deference should be given to a Magistrate's determination).

**39.** *See Potamitis,* 739 F.2d at 789–90, *aff'g,* 564 F.Supp. at 1487.

**40.** *See Anderson v. United States,* 417 U.S. 211, 218, 94 S.Ct. 2253, 2259, 41 L.Ed.2d 20 (1974); *Lutwak v. United States,* 344 U.S. 604, 617–18, 73 S.Ct. 481, 489–90, 97 L.Ed. 593 (1953).

**41.** *See United States v. Finkelstein,* 526 F.2d 517, 523–24 (2d Cir.), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1975).

ship to any issues presented in this case, are denied in totality. In this case the defendants have available to them the full transcript of the first trial record covering six weeks of testimony, which is in effect a complete disclosure of the Government's principal case. In addition, the Government has made available from its files every item of information referred to in pretrial discovery Rule 16, Fed.R.Crim.P., pertinent to this case. The Government also has acknowledged its continuing duty to disclose under Rule 16(c) and has represented that if, prior to trial, it discovers additional evidence or material previously requested that is subject to discovery under the Rule, the Government will make known to the defendants the existence of said additional evidence or material.

The defendants' discovery motions are denied except as to information furnished by the Government as set forth in its various discovery consents.

So ordered.